# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CARLY PISARRI and AUBILY REMUS JASMIN, JOSHUA BILMES, SAMANTHA FAHY, BARI LASKY, ELIZABETH PLESSER, PETR PRIELOZNY, VADIM TERNOVSKI, and HELENA VON ROSENBERG,<br><br>        Plaintiffs, on behalf of themselves and all others similar situated,<br><br>   -against-<br><br>TOWN SPORTS INTERNATIONAL, LLC and TOWN SPORTS INTERNATIONAL HOLDINGS, INC. d/b/a NEW YORK SPORTS CLUBS, BOSTON SPORTS CLUBS, WASHINGTON SPORTS CLUBS and PHILADELPHIA SPORTS CLUBS,<br><br>        Defendants. | Civil Action No. 18-cv-01737-LLS-KNF |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

### GORDON REES SCULLY MANSUKHANI, LLP
*Attorneys for Defendants Town Sports International, LLC, Town Sports International Holdings, Inc. d/b/a New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs*
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
Phone: (973) 549-2500
Fax: (973) 377-1911

Of Counsel and on the Brief:
  Peter G. Siachos, Esq.
  Donald Derrico, Esq.
  Matthew P. Gallo, Esq.

<u>**TABLE OF CONTENTS**</u>

<u>**Page(s)**</u>

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS ............................................................................4

    TSI's Membership Options..........................................................................4

    Plaintiffs' Agreements with TSI...................................................................5

    Terms and Conditions of TSI Agreements ......................................................6

    TSI Launches its Elite Clubs ......................................................................8

    TSI's Alleged Deceptive and Misleading Practice..............................................9

    TSI's Alleged Retaliation as to Plaintiffs Pisarri and Jasmin..............................10

PROCEDURAL HISTORY.........................................................................10

LEGAL ARGUMENT...............................................................................12

    POINT I ...............................................................................................12

        STANDARD OF REVIEW ..................................................................12

    A.    FED. R. CIV. P. 12(B)(6)....................................................................12

    B.    FED. R. CIV. P. 9(B) .........................................................................13

    POINT II ..............................................................................................13

        PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS
        ON BEHALF OF THEMSELVES OR PUTATIVE CLASS
        MEMBERS .....................................................................................13

    A.    PLAINTIFFS FAIL TO ALLEGE THAT TSI INVADED A
        LEGALLY PROTECTED INTEREST THAT IS CONCRETE
        AND PARTICULARIZED ..................................................................15

B.     THERE IS NO CAUSAL RELATIONSHIP BETWEEN PLAINTIFFS' ALLEGED INJURY AND TSI'S CONDUCT ..........16

POINT III............................................................................18

PLAINTIFFS' CLAIMS FAIL BECAUSE TSI PERFORMED UNDER THE APPLICABLE CONTRACTS ...................................18

A.     PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW .......................................................19

B.     PLAINTIFFS INDIVIDUALIZED CLAIMS FOR BREACH OF CONTRACT UNDER A RETALIATION THEORY FAIL AS A MATTER OF LAW ................................................21

POINT IV ...........................................................................22

PLAINTIFFS' FRAUD-BASED CLAIMS FAIL AS A MATTER OF LAW ...............................................................................22

A.     PLAINTIFFS' FRAUD CLAIMS FAIL AS A MATTER OF NEW YORK LAW ............................................................23

     1.     Plaintiffs Fail to Satisfy the Heightened Pleading Standard of FRCP 9(b) ................................................................23

     2.     Plaintiffs Fail To Plead A False Representation Of Fact..........24

     3.     Plaintiffs Fail to Establish That TSI Intended To Defraud Them25

     4.     Plaintiffs Fail to Allege Injury, Harm, or Ascertainable Loss..25

B.     PLAINTIFFS' N.Y. GEN. BUS. L. § 349 CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED .........................26

     1.     TSI Did Not Mislead Plaintiffs In A Material Way ................27

     2.     Plaintiffs Do Not Plead An Actual Injury.................................28

C.     PLAINTIFFS' D.C. CONSUMER PROTECTION PROCEDURES ACT §§ 28-3901 *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED .....................29

D.  PLAINTIFFS' PENNSYLVANIA UNFAIR TRADE
    PRACTICES & CONSUMER PROTECTION LAW 73 § 201-
    1 *ET SEQ.* CLAIM MUST BE DISMISSED AS A MATTER
    OF LAW .......................................................................................... 30

    1.  Plaintiffs Do Not Plead The *Prima Facie* Elements Required . 30

    2.  The Economic Loss Doctrine Bars Any Recovery Under the
        PUTPCPL .................................................................................. 31

E.  PLAINTIFFS' CONNECTICUT UNFAIR TRADE
    PRACTICES ACT, §42-100, *ET SEQ.* CLAIM MUST BE
    DISMISSED AS A MATTER OF LAW ........................................... 32

    1.  Connecticut Law Is Inapplicable .............................................. 32

    2.  Plaintiffs Fail To Plead That An Unscrupulous Act Caused
        Plaintiffs An Injury Under CUTPA .......................................... 32

    3.  Plaintiffs Fail To Plead An Ascertainable Loss Under CUTPA 33

F.  PLAINTIFFS' MARYLAND CONSUMER PROTECTION
    ACT § 13-101, *ET SEQ.* CLAIM FAILS AS A MATTER OF
    LAW AND MUST BE DISMISSED ................................................ 33

    1.  The Alleged Fraud Did Not Occur In Maryland ...................... 33

    2.  Plaintiffs Fail To Plead The *Prima Facie* Elements With The
        Requisite Specificity ................................................................ 34

    3.  Plaintiffs Fail To Plead The Requisite Scienter Under Md. Code
        Ann., Com. Law § 13-301(9) .................................................... 35

G.  PLAINTIFFS' NEW JERSEY CONSUMER FRAUD ACT,
    §56:8-1, *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW
    AND MUST BE DISMISSED .......................................................... 35

    1.  The New Jersey Consumer Fraud Act Is Inapplicable ............. 36

    2.  Plaintiff Cannot Establish Unlawful Conduct Material To
        Plaintiffs' Transaction .............................................................. 36

3.      Plaintiffs Cannot Plead That They Suffered An Ascertainable Loss ...................................................................................37

H.     Plaintiffs' RHODE ISLAND UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION ACT, §6-13.1-1, *ET SEQ.* Claim FAILS AS A MATTER OF LAW AND MUST BE DISMISSED .........................................................................38

1.      Rhode Island Law Is Inapplicable ............................................38

2.      Plaintiffs Have Not Pleaded Facts That Show TSI's Conduct Was Unfair Or Material ............................................................39

3.      Plaintiffs Cannot Show An Ascertainable Loss.......................39

I.      PLAINTIFFS' VIRGINIA CONSUMER PROTECTION ACT OF 1977, §59.1-196, *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED............................................39

1.      Virginia Law Is Inapplicable ....................................................40

2.      Plaintiffs Do Not Plead Facts Sufficient To Meet The Reliance And Intent Requirements ..........................................................40

3.      Plaintiffs Suffered No Loss As A Result Of TSI's Conduct ....40

J.      PLAINTIFFS' MASSACHUSETTS CONSUMER PROTECTION ACT, M.G.L.A. C. 93A §§ 1 *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED .........................................................................41

1.      Massachusetts Law Is Inapplicable..........................................41

2.      Plaintiffs Did Not Comply With The Thirty-Day-Demand Prerequisite...............................................................................42

3.      Plaintiffs Do Not Plead The Requisite Elements With Specificity ...............................................................................42

POINT V ........................................................................................43

PLAINTIFFS' RETALIATION CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED................................................43

iv

POINT VI ......................................................................................................44

      PLAINTIFFS' *PRIMA FACIE* TORT CLAIM FAILS AS A
MATTER OF LAW AND MUST BE DISMISSED ..........................44

CONCLUSION ..............................................................................................45

## **TABLE OF AUTHORITIES**

## Cases

*Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*,
   2015 NY Slip Op 25274, ¶ 5, 49 Misc. 3d 1027, 19 N.Y.S.3d 850 (Sup.
   Ct.) ............................................................................................................ 27, 28

*Abdullahi v. Pfizer, Inc.*,
   562 F.3d 163 (2d Cir. 2009) ............................................................................13

*Adams v. NVR Homes, Inc.*,
   135 F. Supp. 2d 675 (D. Md. 2001) ............................................................ 34, 35

*Altman v. Bayer Corp.*,
   125 F. Supp. 2d 666 (S.D.N.Y. 2000)..............................................................27

*Am. Corp. Soc'y v. Valley Forge Ins. Co.*,
   424 F. App'x 86 (3d Cir. 2011)........................................................................36

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 12, 13

*Bear, Stearns Funding, Inc. v. Interface Grp. -- Nev., Inc.*,
   361 F. Supp. 2d 283 (S.D.N.Y. 2005)..............................................................44

*Beaver Emp't Agency v. Noestring, Inc.*,
   609 N.Y.S.2d 509 (Civ. Ct. 1993)....................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................12

*Brennan v. Carvel Corp.*,
   929 F.2d 801 (1st Cir. 1991) ...........................................................................41

*Chenlen v. Philips Elecs. N. Am.*,
   20 Mass. L. Rep. 652.......................................................................................41

*Cole v. Laughrey Funeral Home*,
   376 N.J. Super. 135 (App. Div. 2005).......................................................... 36, 37

*Consumer Prot. Div. v. Outdoor World Corp.*,
   91 Md. App. 275 (1992)...................................................................................34

*Cooper v. GGGR Invs., LLC*,
  334 B.R. 179 (E.D. Va. 2005) ...........................................................................40

*Cox v. Sears Roebuck & Co.*,
  138 N.J. 2 (N.J. 1994)........................................................................................36

*DepoLink Court Reporting & Litig. Support Servs. v. Rochman*,
  430 N.J. Super. 325 (Super. Ct. App. Div. 2013) ..............................................36

*Direct Cabinet Sales, Inc. v. A-1 Tech., Inc.*,
  2013 NY Slip Op 32102(U) (Sup. Ct.)................................................................23

*Elyazidi v. SunTrust Bank*,
  780 F.3d 227 (4th Cir. 2015)..............................................................................34

*F.T.C. v. Verity International, Ltd.*,
  443 F.3d 48 (2d Cir. 2006) .................................................................................38

*Foraste v. Brown Univ.*,
  248 F. Supp. 2d 71 (D.R.I. 2003) .......................................................................38

*Fox v. Idea Sphere, Inc.*,
  2013 U.S. Dist. LEXIS 42674 (S.D.N.Y. Mar. 21, 2013) ..................................19

*Freihofer v. Hearst Corp.*,
  65 N.Y.2d 135 (1985).........................................................................................44

*Friends of the Earth, Inc.*,
  528 U.S. 167 (2000) ...........................................................................................14

*Friest v. Luxottica Grp. S.P.A.*,
  2016 U.S. Dist. LEXIS 174955, at *10 (D.N.J. Dec. 16, 2016) .........................36

*G2 Entm't LLC v. Tractenberg & Co. LLC*,
  2012 NY Slip Op 33457(U) (Sup. Ct.)................................................................22

*Gavin v. AT&T*,
  543 F.Supp.2d 885 (N.D. Ill 2008).....................................................................13

*Golt v. Phillips*,
  308 Md. 1 (1986) ...............................................................................................35

*Goodfellow v. Allstate Indem. Co.*,
  No. 14-CV-642S, 2014 U.S. Dist. LEXIS 177835, at *6 (W.D.N.Y. Dec.
  27, 2014) ................................................................................................................44

*Hayes v. Hambruch*,
  841 F. Supp. 706 (D. Md. 1994) ...........................................................................35

*Hazelhurst v. Brita Prods. Co*.,
  295 A.D.2d 240, 744 N.Y.S.2d 31 (App. Div. 2002)...........................................28

*Hoffman v. Hampshire Labs, Inc.*,
  405 N.J. Super. 105 (Super. Ct. App. Div. 2009)....................................... 36, 38

*Iannacchino v. Ford Motor Co.*,
  451 Mass. 623 (2008) ...........................................................................................42

*Joaquin v. Lonstein Law Office, P.C.*,
  2017 U.S. Dist. LEXIS 99466, at *3 (D.N.J. June 27, 2017) ..............................36

*Kottler v. Deutsche Bank AG*,
  607 F. Supp. 2d 447 (S.D.N.Y. 2009)........................................................... 13, 23

*Laccinole v. Twin Oaks Software Dev., Inc.*,
  2014 U.S. Dist. LEXIS 73879, at *23-24 (D.R.I. May 1, 2014) .........................39

*Lee v. City of Chicago*,
  330 F.3d 456 (7th Cir. 2003.)................................................................................14

*Long*, 93 A.3d at 1003................................................................................................39

*Lord v. Commercial Union Ins. Co.*,
  60 Mass. App. Ct. 309 (2004) ...................................................................... 42, 43

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................................14

*Luskin's, Inc. v. Consumer Prot. Div.*,
  353 Md. 335, 726 A.2d 702 (1999)......................................................................35

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
  137 F. Supp. 3d at 482 (S.D.N.Y. 2015) ...................................................... 13, 23

*Mayer v. United Air Lines, Inc.*,
  2010 N.J. Super. Unpub. LEXIS 2748, at *11 (Super. Ct. App. Div. Nov.
  15, 2010)................................................................................................................20

*Micalizzi v. Rumsfeld*,
  247 F. Supp. 2d 556 (D. Vt. 2003).......................................................................19

*Noise in The Attic Prods., Inc. v London Records*,
  10 A.D.3d 303 (1st Dep't. 2009).........................................................................18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995).............................................................................................27

*Ovitz v. Bloomberg L.P.*,
  2012 NY Slip Op 2249, ¶ 4, 18 N.Y.3d 753, 759 ..............................................28

*Owens v. DRS Auto. Fantomworks, Inc.*,
  288 Va. 489 (2014)...............................................................................................40

*Peterson v. GMAC Mortg., LLC*,
  No. 11-11115-RWZ, 2011 U.S. Dist. LEXIS 123216, at *17 (D. Mass.
  Oct. 25, 2011) ......................................................................................................42

*Picker Int'l v. Leavitt*,
  865 F. Supp. 951 (D. Mass. 1994)........................................................................41

*Polk v. Crown Auto, Inc.*,
  228 F.3d 541 (4th Cir. 2000)................................................................................41

*Rodi v. S. New Eng. Sch. of Law*,
  389 F.3d 5 (1st Cir. 2004) ....................................................................................42

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ................................................................................19

*Seldon v. Home Loan Servs.*,
  647 F.Supp.2d 451 (E.D. Pa.2009).......................................................................30

*Siegel v. Landy*,
  2006 NY Slip Op 8235, ¶ 2, 34 A.D.3d 556, 824 N.Y.S.2d 404 (App.
  Div.).....................................................................................................................27

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ............................................................................13

*Slapikas v. First Am. Title Ins. Co.*,
   298 F.R.D. 285 (W.D. Pa. 2014) (citing 73 Pa. Stat. § 201–3)............30

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999)...........................................................................28

*Sokoloff v. Town Sports Int'l, Inc.*,
   78 N.Y.S.2d 9 (App. Div. 2004) ........................................................29

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................... 14, 16

*State ex rel. Gildar v. Kriss*,
   191 Md. 568, 62 A.2d 568 (Md. 1948) ..............................................34

*Stevelman v. Alias Research, Inc.*,
   174 F.3d 79 (2d Cir. 1999) ................................................................13

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (2000)................................................................... 27, 28

*Tarpey v. Crescent Ridge Dairy, Inc.*,
   47 Mass. App. Ct. 380, 713 N.E.2d 975 (1999)..................................42

*Thiedemann v. Mercedes-Benz USA, LLC*,
   183 N.J. 234 (2005) ...........................................................................37

*Toy v. Metro. Life Ins. Co.*,
   928 A.2d 186 (Pa. 2007).....................................................................30

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*,
   582 F. Supp. 2d 605 (S.D.N.Y. 2008) ................................................13

*Vaughn v. AAA*,
   326 F. Supp. 2d 195 (D. Mass. 2004)........................................... 42, 43

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
   517 F.3d 104 (2d Cir. 2008) ..............................................................13

*Vigiletti v. Sears, Roebuck & Co.*,
  2007 NY Slip Op 6110, ¶ 1, 42 A.D.3d 497, 838 N.Y.S.2d 785 (App.
  Div.)..................................................................................................................28

*Weinberg v. Sprint Corp.*,
  173 N.J. 233 (2002) ........................................................................................37

*Yankee Candle Co. v. Bridgewater Candle Co.*,
  259 F.3d 25 (1st Cir. 2001) .............................................................................41

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  854 A.2d 425 (Pa. 2004)..................................................................................30

**Statutes**

Connecticut Unfair Trade Practices Act, §42-100....................................................11

Federal Rules of Civil Procedure 12(b)(6) .............................................................12

Federal Rules of Civil Procedure 9(b) ....................................................................13

Maryland Consumer Protection Act §13-101 ........................................... 11, 12, 34

Mass. Ann. Laws ch. 93A, § 9................................................................... 41, 42

Massachusetts Consumer Protection Act, M.G.L.A. c. 93A §§ 1 ................... 11, 41

N.J. Stat. Ann. § 56:8-19........................................................................... 37, 38

New Jersey Consumer Fraud Act, §56:8-1 ................................................ 11, 36, 37

Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-111, 38, 39

Virginia Consumer Protection Act of 1977, §59.1-196..........................................11

## PRELIMINARY STATEMENT

Defendants Town Sports International, LLC and Town Sports International Holdings, Inc. d/b/a New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, and Philadelphia Sports Clubs (collectively, "TSI") submit this Memorandum of Law in Support of their Motion to Dismiss the First Amended Putative Class Action Complaint ("Complaint") of Plaintiffs Carly Pisarri ("Pisarri"), Aubily Remus Jasmin ("Jasmin"), Joshua Bilmes ("Bilmes"), Samantha Fahy ("Fahy"), Bari Lasky ("Lasky"), Elizabeth Plesser ("Plesser"), Petr Prielozny ("Prielozny"), Vadim Ternovski ("Ternovski"), and Helena Von Rosenberg ("Rosenberg") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim.

In describing Plaintiffs' Complaint, the "kitchen-sink" approach is an understatement. Not only do Plaintiffs allege that TSI violated nine different state consumer protection statutes, but they also conjure up a cause of action for "common law retaliation," that even the savviest and most experienced litigators would balk at.  In short, Plaintiffs not only pull claims out of thin-air, but have likewise run afoul of the pleading standards as articulated in *Twombly* and *Iqbal* and the heightened pleading standing of Fed. R. Civ. P. 9 (b).

After sifting through the repetitive and contrived allegations in Plaintiffs' Complaint, its essence can be stripped down to these two claims: (1) Plaintiffs were deceived into *purchasing* and *continuing* their Passport Memberships, which beginning in 2007, were subject to additional fees to access TSI's "Elite" clubs; and (2) TSI retaliated against Plaintiffs by revoking their memberships after filing this class action Complaint.  Incredibly, Plaintiffs readily admit that when they agreed to join as TSI Club members, they received access to all TSI clubs then in existence.  However, despite clear and explicit contractual language that contradicts Plaintiffs'

assertions, they insist that their Passport Memberships included access to all *future* TSI clubs regardless of the club's classification.

In 2017, after making significant renovations and upgrades to seven TSI club locations, TSI implemented an additional fee requirement for access to its luxuriously rebranded "Elite" clubs.  As such, Passport Members could no longer access the Elite Clubs without first remitting payment of the additional fee.  However, TSI took no actions beyond what was bargained for in its agreements with Passport Members.  Those agreements permit TSI to change its fees and reclassify certain clubs.  TSI exercised its authority under those very provisions when it launched its Elite Clubs in an effort to compete with other health service providers offering a luxurious gym experience.  Consequently, TSI decided to market a total of seven clubs in New York and Massachusetts as Elite Clubs, requiring members to pay an additional fee for access.  The launch of the Elite Clubs did not change the right of a Passport Member to, at any time, unilaterally terminate his or her agreement under the terms of the Passport Member agreement.  Further, no Passport Member's monthly dues were increased in connection with the establishment of the Elite Clubs.

As a result of TSI's imposition of an additional fee to visit the Elite Clubs, Plaintiffs audaciously assert several meritless breach of contract claims, most of which are disguised as consumer fraud claims.  These include claims under the laws of nine different states despite Plaintiffs' failure to assert that any law, other than New York law, applies here.  Plaintiffs are all residents of New York; no Plaintiff visited any clubs outside of New York; no Plaintiff received representations outside of New York; no Plaintiff was charged fees outside of New York; and Plaintiffs do not assert that Elite Clubs exist outside of New York, with the exception of Massachusetts.  Further, the Complaint is anything but a model of clarity, and it is impossible to

decipher how Plaintiffs were allegedly misled or deceived.  Essentially, Plaintiffs are claiming they have suffered an injury as a byproduct of TSI's decision to exercise a contractual right by launching its Elite clubs.

Plaintiffs' breach of contract claims, in addition to being duplicative of the fraud claims, are equally unpersuasive.  Plaintiffs assert two theories of contractual liability: (1) TSI breached their membership agreements by not providing "all access"[1] to their clubs; and (2) TSI breached their membership agreement by terminating the contracts of Plaintiffs without "cause."  First, while Plaintiffs are quick to allege a breach, they overlook one substantial fact: no agreement expressly grants Plaintiffs the right to access all of TSI's gyms.  It is unclear why Plaintiffs presume their membership agreements included an "all access" right.  Simply put, TSI cannot breach a contractual provision that does not exist.  In fact, the very same agreements which Plaintiffs rely on clearly provide that TSI may charge additional fees for clubs that are outside each member's plan.  If Plaintiffs are surprised that additional fees are required to access "Elite" clubs, they need look no further than the very membership contracts they agreed to.

Next, Plaintiffs' breach of contract claims are eviscerated by the fact that they executed at-will agreements.  Simply stated, the agreements could be terminated by either party at any time.  However, not a single Plaintiff terminated his or her contract despite knowing of the additional fees for access to TSI's Elite Clubs.  Similarly, the plain language of the agreements gave TSI the right to terminate, at its sole discretion, any membership.  TSI exercised that very right in terminating Plaintiffs' agreements.

Finally, Plaintiffs' contrived *prima facie* tort claim and "retaliation" claim must be dismissed.  There simply is no cognizable claim for "retaliation" outside the employment

---

[1] Plaintiffs presumptively define "all-access" to TSI clubs as meaning capable of accessing every TSI club that ever comes to be in existence, including all prior and future clubs.  *See* Compl. ¶¶ 2-3.

context.  Plaintiffs were never employed by TSI, and as a result, have suffered no adverse action.

To the extent Plaintiffs argue that retaliation claims should extend to a consumer-merchant

relationship, this novel argument is unsupported and must be dismissed.  TSI had no choice,

from a business perspective, but to terminate Plaintiffs' agreements as Plaintiffs continued to act

to the detriment of TSI, slander TSI clubs to other members, and mine for additional class

members.

      For the reasons set forth above, TSI's motion to dismiss Plaintiffs' class action

Complaint, for failure to state a claim, should be granted.

**STATEMENT OF FACTS**

      TSI is a publicly-traded company that owns and operates gym locations throughout the

Northeast of the United States in New York, Boston, Washington D.C., and Philadelphia with

over 544,000 current members.  *See* Declaration of Peter Siachos ("Siachos Decl."), Exhibit A,

Complaint ("Compl.") ¶¶ 1, 2.  TSI, through each of these brands, has sold hundreds of

thousands of customers "Passport Memberships."  *Id.*  However, Plaintiffs contend that TSI no

longer grants passport members access to all gyms, and instead, requires them to pay an

additional fee to access TSI's clubs branded as "Elite."  *Id.* at ¶ 47.  It is thus alleged that, by

changing the terms of Plaintiffs' agreements to now require the additional fee, TSI deceives

passport members into *continuing* their membership.  *Id.* at ¶ 57.

**TSI's Membership Options**

      Plaintiffs allege that TSI offers several different membership options to their costumers,

including, but not limited to (1) single memberships for one "home" location only; (2) regional

passport memberships which provide for all-access within a particular geographic region; (3)

gold memberships which are all-access, but limited to off-peak times; and (4) the passport

memberships, which provide access to all of TSI's clubs.  *See* Compl. at ¶¶ 27-30.  The Passport

4

Memberships are higher-priced than the single memberships, allowing TSI to collect increased revenue.  *Id.* at ¶ 29.  As alleged in the Complaint, the Plaintiffs and putative class members include those with regional memberships, gold memberships, and passport memberships (hereinafter, collectively referred to as "Passport Memberships" or "Passport Members").  *Id.* at ¶ 28.

Plaintiffs claim that they learned that Passport Memberships provide "all-access" to TSI's gym locations when TSI made representations "through verbal statements of its employees and/or agents and written material or contracts."  *Id.* at ¶¶ 38-39.  Plaintiffs elaborate no further.[2] *See generally, id.*

## Plaintiffs' Agreements with TSI

Plaintiffs allege that they contracted with TSI for Passport Memberships, which permitted them to use any TSI club existing at the time of contract and any future clubs.  *See* Compl. ¶¶ 38-40.  It is further alleged that TSI uses the same and/or similar language in its contracts with other Passport Members.[3]  *Id.* at ¶ 41.  In some instances, Passport Members orally agreed to TSI's terms and conditions and contracted to receive TSI's gym services.  *Id.* at ¶ 34.  In other instances, Passport Members executed written membership contracts agreeing to TSI's terms and conditions.  *Id.* at ¶ 33.  However, in all instances, Passport Members maintained their

---

[2] TSI markets and advertises its memberships on its website.  However, TSI's website specifically states that Passport Memberships exclude "Elite" clubs, including the Boston Racquet Club, Waltham, Wellesley, FiDi, Grand Central, 23rd & Park, 91st and 3rd, and TSI's Flagship location: Astor Place."  Siachos Decl., Exhibit C.  Moreover, TSI's website contains the following language under "Club Usage," as follows:

> Additional club usage fees may apply when visiting clubs.

> Please be advised that based on your membership type, and the day and time you enter a club, you may be charged an additional usage fee. The amount of these usage fees may vary by club. Please contact the club you plan to visit for their exact usage fee rates.

*See* Siachos Decl., Exhibit C.
[3] Every TSI membership agreement contains the same or substantially similar contract provisions cited herein.

memberships by remitting monthly dues to TSI, which in turn gives them a license to access TSI clubs for that corresponding month.  *See id.* at ¶¶ 3, 59; *see* Siachos Decl., Exhibit B.  Generally, the agreements provide:

> **1.4    Monthly Dues.**  Members shall pay, in advance, monthly membership dues.  TSI may adjust court fees, or *any other fees*, other than monthly dues, at any time.

*See* Siachos Decl., Exhibit B, Rosenberg Agreement.

Plaintiffs allege that Pisarri became a member in 2001, Von Rosenberg in 2006, Jasmin in 2009, Fahy in 2010, Bilmes and Plesser in 2013, Lasky and Prielozny in 2015, and Ternovski in 2017.  *See id.* at ¶¶ 60, 68, 74, 84, 90, 98, 112, 127, 135.  All of Plaintiffs' membership agreements specify the type of membership agreed to, but do not contain "all-access" language. *See* Siachos Decl., Exhibit B.

**<u>Terms and Conditions of TSI Agreements</u>**

Upon agreeing to become members, Plaintiffs agreed to "comply with all of the rules and regulations of Town Sports International, LLC and the health clubs it owns and operates" when using a TSI club, which are conspicuously posted on the TSI "website and/or are available at the club, and *may change from time to time.*"  *See* Siachos Decl, Exhibit B, Ternovski Agreement (emphasis added).  Further, the Terms and Conditions accompanying Plaintiffs' agreements give TSI the authority to revoke Plaintiffs' memberships:

> ***Revocation of Membership.***  At [TSI's] discretion, your membership may be revoked at any time and for any reason, including if, ***in the reasonable judgment of a Club, you have acted in a manner contrary to the best interests*** or safety of a Club or other members, or if your account has a balance past due.

*See* Siachos Decl. Exhibit B, Ternovski Agreement, § 2.1 (emphasis added).  Additionally, Plaintiffs are likewise permitted to terminate their memberships at any time:

> You understand that your Month-to-Month membership will continue month to month until you cancel it by providing 30 days' notice.
>
> You may cancel your membership at any time after your Commitment Period, if any, by (1) giving notice at the club and obtaining a cancellation receipt, or (2) sending a written notification by certified or registered mail to the club at the address set forth above.  Your cancellation will be effective 30 days after you provide proper notice of cancellation, and you will continue have the services provided under this agreement until the end of the 30 day notice period.[4]

*See, e.g.*, Siachos Decl., Exhibit B, Ternovski Agreement.

Plaintiffs allege that the Passport Membership agreements give them "all-access" to "any TSI club at any time."  *Id.* at ¶ 34.  However, contrary to Plaintiffs' contention, this notion is no where to be found in any Plaintiff's agreement.  *See generally*, Siachos Decl., Exhibit B.  Nor do any agreements include language suggesting that TSI agreed to provide access to all *future* TSI clubs not existing at the time of contract.  *Id.*  Rather, Section 2.2 of Plaintiffs' agreements—the only provision specifying the scope of club usage—provides that "[a]dditional fees may apply if you use clubs or services outside of your membership privileges."  *Id.*  Further, notwithstanding Section 2.2, TSI reserved their right to change the rules of the club, which are incorporated into each Plaintiff's agreement by reference:[5]

> **4.10    Reciprocity & Use Privileges.**  TSI may from time-to-time designate certain clubs as "Premium Clubs," which will be available only to those members who purchase "Passport Premium" memberships.  If you have a "Passport" membership,

---

[4] Some Plaintiffs agreed to a one-year membership commitment in exchange for a lower monthly rate, which required them to pay dues on a month-to-month basis for at least one year.  *See* Siachos Decl., Exhibit B.  Plaintiffs could cancel at any time during the commitment period, but not without paying a cancellation fee, which TSI implemented to insure itself against members taking advantage of the lower rate by cancelling within the commitment period.  *Id.*  However, by the time TSI allegedly "changed the terms" of the passport memberships in 2017, each Plaintiff was effectively in an at-will agreement, having carried-over his or her membership beyond the commitment year.  *Id.*

[5] Each Plaintiff has acknowledged in their agreements that they have "received and will comply with the rules and regulations of TSI."  *See* Siachos Decl., Exhibit B.

you may use any TSI club, ***other than Premium Clubs***, at any time.

    **4.14     Changing These Rules.  *TSI has the right to change these Rules at any time.*** TSI will notify members of any changes, and TSI will consider that a member has accepted the changes if such member keeps or uses his or her membership card after receipt of our notice.  If a member does not accept the changes, such member may terminate his or her membership in the manner provided on the front of the contract.

*See* Siachos Decl., Exhibit B (emphasis added).  As of 2017, Plaintiffs' membership barcode no longer granted Plaintiffs access to certain Elite Clubs.  *See* Compl. at ¶¶ 52-53; *see also infra* note 7.  At the time they scanned their barcodes to access the New York Elite Clubs, TSI notified Plaintiffs and demanded payment of the additional fee prior to allowing them to enter.  *See* Compl. at ¶¶ 60-148.  Plaintiffs either agreed to pay the fee and access the Elite Clubs or chose not to enter and were not charged the fee.[6]  *Id.*

**TSI Launches its Elite Clubs**

    In February 2017, TSI performed significant upgrades within certain pre-existing clubs and began to market them as "elite" or "flagship."  *Id.* at 47.  More specifically, as of 2017, Passport Members are required to pay an additional fee to access the following TSI Elite club locations:

- NYSC gym located at 4 Astor Place, New York, NY 10003;

- NYSC gym located at 30 Broad Street, New York, NY 10005;

- NYSC gym located at 113 East 23rd Street, New York, NY 10010;

- NYSC gym location at 1637 Third Avenue (91st Street), New York, NY 10128;

- BSC gym located at 100 Summer Street, Boston, MA 02110;

---

[6] TSI's computer system tracks log in attempts.  When a member scans his or her barcode, a TSI employee operating the front desk is alerted as to whether the member has access to that particular club.  TSI employees are instructed to deny a member's access to certain TSI clubs that are outside of that member's membership.

- BSC gym located at 840 Winter Street, Waltham, MA 02451;

- BSC gym located at 140 Great Plain Avenue, Wellesley, MA 02482.

*Id.* ¶ 40 (hereinafter referred to as "Elite Clubs").

Plaintiffs allege broadly that during 2017, they visited "various Inaccessible Clubs" and certain New York Elite Clubs, "which had always been part of [their] all-access Passport Membership[s]." However, Plaintiffs do not specifically allege that they, or any of the Passport Members, visited or paid an additional fee to access any of the TSI clubs in Washington D.C., Pennsylvania, Connecticut, Maryland, New Jersey, Rhode Island, Virginia, or Massachusetts. *See generally*, Compl. Additionally, Plaintiffs are not residents of those states. *Id.* Instead, Plaintiffs generally allege that, "upon information and belief, there are additional TSI clubs that Passport Members have not been [sic] and/or are not permitted access." *Id.* ¶ 48. However, Plaintiffs were prompted to pay an additional fee or were charged an additional fee to access the Elite Clubs in New York only.[7] *Id.*

Plaintiffs conclude that TSI deceived its Passport Members and Plaintiffs by changing the terms of its membership agreements in 2017 to require payment of additional fees for access to the Elite Clubs. *Id.* at Part II. Notably, no Plaintiff exercised his or her contractual right to terminate upon learning of TSI's change to the terms of the agreements. *See id.*, Part III.

**TSI's Alleged Deceptive and Misleading Practice**

Plaintiffs allege that despite having contracted with TSI for Passport Memberships with full access to all then-existing and future TSI locations, TSI allegedly did not provide this service. *See* Compl. ¶ 56. However, it is undisputed that TSI provided Plaintiffs with access to

---

[7] Only Plaintiffs Joshua Bilmes, Petr Prielozny, Vadim Ternovski, and Helena Von Rosenberg allege they visited a specific clubs in New York that required an additional fee. The remaining Plaintiffs do not specify which Elite Clubs required an additional fee on any specific occasion.

all TSI clubs from the time they agreed to become members to until 2017.[8]  *Id.* at ¶¶ 65, 71, 77-80, 87, 93-96, 101-06, 115-20, 130-33, 138-43.  In other words, after Plaintiffs contracted with TSI for Passport Memberships, they were provided with access to every TSI club, including Elite Clubs.  *Id.*

**TSI's Alleged Retaliation as to Plaintiffs Pisarri and Jasmin**

Additionally, Plaintiffs allege that on or about February 14, 2018, TSI's Chief Executive Officer, Patrick Walsh called Jasmin and Pisarri and "berated" them for bringing claims against TSI.  Compl. ¶ 150-52.  It is further alleged that Mr. Walsh asked Jasmin and Pisarri to drop their claims against TSI.  *Id.*  Shortly thereafter, TSI banned Pisarri and Jasmin from entering TSI's gym locations.  *Id.* ¶ 153.   Later, TSI banned the remaining Plaintiffs from entering TSI's gym locations.  *Id.* ¶ 158.  Plaintiffs contend that such conduct was retaliatory for Plaintiffs asserting claims against TSI.  *Id.* ¶ 155, 158.

## PROCEDURAL HISTORY

On February 1, 2018, Plaintiffs Carly Pisarri ("Pisarri") and Aubily Remus Jasmin ("Jasmin") filed a six-count putative class action Complaint in the Supreme Court of New York, New York County against TSI for alleged violations of the New York General Business Law § 349 ("GBL"); D.C. Consumer Protection Procedures Act §§ 28-3901 *et seq.* ("DCCPPA");

---

[8] Plaintiffs' counsel, David E. Gottlieb, Esq., acknowledges the fact that TSI re-branded certain clubs after all but one member contracted to receive the benefit of TSI's services.  *See* Siachos Decl., Exhibit D, pg. 3, ¶¶ 4-22.  In fact, TSI did not charge fees to visit Elite Clubs in New York until very recently, and certainly well after Plaintiffs purchased their respective memberships.  At least one Plaintiff was provided with access to all TSI clubs for as long as 16 years.  *See* Compl. at ¶¶ 60, 65.  Specifically:

- The NYSC gym located at 4 Astor Place, New York, NY 10003 was opened in May 2017, with usage fees beginning in July 2017;
- The NYSC gym located at 30 Broad Street, New York, NY 10005 began charging usage fees on February 1, 2018;
- The NYSC gyms located at 113 East 23rd Street, New York, NY 10010 and at 1637 Third Avenue (91st Street), New York, NY 10128 began charging usage fees on February 1, 2017.

Notably, Plaintiffs fail to allege that they visited or attempted to visit but were denied access to *any* Massachusetts Elite Club.  Thus, only the New York Elite Clubs are relevant in this matter.

Pennsylvania Unfair Trade Practices & Consumer Protection Law 73 § 201-1 *et seq.* ("PUTPCPL"); Massachusetts Consumer Protection Act, M.G.L.A. c. 93A §§ 1 *et seq.* ("MCPA"), in addition to a claim for common law fraud and breach of contract. *See*, Siachos Decl., Exhibit E.  On or about February 26, 2018, the Complaint was voluntarily discontinued.

On February 26, 2018, Plaintiffs Pisarri and Jasmin, along with new plaintiffs Bilmes, Fahy, Lasky, Plesser, Prielozny, Ternovski, and Rosenberg filed a class action Complaint in the United States District Court, District of New York, including the causes of actions set forth in Plaintiffs' state court Complaint, and additional causes of action under the Connecticut Unfair Trade Practices Act, §42-100, *et seq.* ("CUTPA"); Maryland Consumer Protection Act §13-101, *et seq.* ("MCPA"); New Jersey Consumer Fraud Act, §56:8-1, *et seq.* ("NJCFA"); Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq.* ("RIUTPCPA"); and Virginia Consumer Protection Act of 1977, §59.1-196, *et seq.* ("VCPA").[9]  *See* Dkt. No. 1.

On or about February 27, 2018, Plaintiffs filed an Order to Show Cause, Temporary Restraining Order, and Preliminary Injunction ("Order to Show Cause") seeking to enjoin TSI from: (i) banning Plaintiffs and any other putative Class members from TSI clubs; (ii) engaging in any form of retaliation against Plaintiffs and any other putative Class members for pursing claims in connection with this action; and (iii) communicating with Plaintiffs and any putative Class members in any manner regarding any rights implicated by this action.  *See* Dkt. No. 8. On February 27, 2018, the Court held oral argument on Plaintiffs' application for a temporary restraining order, but denied Plaintiffs' request.

On May 9, 2018, Defendants filed opposition to Plaintiff's request for a preliminary injunction, due to Plaintiff's inability to show imminent irreparable harm, let alone any chance of

---

[9] Plaintiffs MCPA claim was omitted from the initial February 26, 2018 class action complaint having failed to provide TSI with the pre-requisite Thirty-Day Demand.  Plaintiffs served the Thirty-Day Demand on TSI and then amended their Complaint to include their MCPA claim.

success on the merits of their claims.  *See* Dkt. No. 13.  On March 19, 2018, Plaintiffs filed a reply memorandum of law in further support of their request for a preliminary injunction.  *See* Dkt. No. 16.  On April 18, 2018, the Court denied Plaintiffs' Order to Show Cause.  *See* Dkt. No. 21.  On June 1, 2018, after receiving TSI's original motion to dismiss,[10] Plaintiffs filed their amended class action Complaint, overhauling their factual allegations and re-asserting their cause of action under the MCPA.  TSI hereby files the instant motion to dismiss Plaintiffs' Complaint, in lieu of an Answer, as a result of Plaintiffs' failure to state a claim upon which relief may be granted.

## LEGAL ARGUMENT

## POINT I

## STANDARD OF REVIEW

### A.      FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that relief is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In determining whether a complaint states a plausible claim for relief, district courts are instructed to conduct a two-part analysis.  *First,* the factual and legal elements of a claim should be separated.  *Id.*  The District Court must accept all well-pleaded facts as true, but may disregard any legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663-4 (2009).  Next, a District Court must determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief.  *Id.* at 664.  In other words, a complaint must do more than allege a plaintiff's entitlement to relief – it must show such an entitlement with its

---

[10] TSI filed its motion to dismiss the initial Complaint on May 11, 2018, arguing that Plaintiffs insufficiently pleaded its causes of actions.  Plaintiffs then attempted to remedy the deficiencies in their first Complaint by re-pleading the same facts but altering their arguments to address each contention made in TSI's May 11 motion.  However, Plaintiffs Complaint as amended remains deficient.

facts. *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 169 (2d Cir. 2009); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 606 (S.D.N.Y. 2008).  As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 665.

**B.    FED. R. CIV. P. 9(B)**

Rule 9(b) imposes a heightened pleading standard for fraud claims.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9 (b).  To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999); *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009); *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d at 482 (S.D.N.Y. 2015).

<u>**POINT II**</u>

<u>**PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS ON BEHALF OF THEMSELVES OR PUTATIVE CLASS MEMBERS**</u>

Plaintiffs, all of whom are residents of New York, do not have standing to bring claims on behalf of themselves, or putative class members.  Article III limits the jurisdiction of the federal courts to hear only actual cases and controversies.  The concept of standing is part of this limitation.  *Gavin v. AT&T*, 543 F.Supp.2d 885, 894-95 (N.D. Ill 2008) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37-38 (1976)).  The plaintiff, as the party invoking federal

jurisdiction, bears the burden of establishing the required elements of standing. *Id.* Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision. *Id.; Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Friends of the Earth, Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-64 (1992) (holding that plaintiffs' intention "[s]uch "some day" intentions [to visit a place in the future where they will presumably be injured] -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the "actual or imminent" injury that our cases require.")

If standing is challenged as a factual matter, the plaintiff must come forward with "competent proof that is a showing by a preponderance of the evidence that standing exists." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003.). To establish injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. Hence, the plaintiff's injury must be "particularized" and "concrete." For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id*. To be "concrete," the injury must be "de facto"—it must exist, be real, and not abstract. *Id.* at 1548-49.

Here, Plaintiffs cannot meet this stringent standard. First, Plaintiffs do not allege that a concrete and particularized interest has been infringed. Further, Plaintiffs cannot assert claims under the law of any state, except for New York, as the Complaint is devoid of any allegations

that Plaintiffs resided in, or visited a TSI location in Washington D.C., Pennsylvania, Connecticut, Maryland, New Jersey, Rhode Island, Virginia, or Massachusetts.

## A.   PLAINTIFFS FAIL TO ALLEGE THAT TSI INVADED A LEGALLY PROTECTED INTEREST THAT IS CONCRETE AND PARTICULARIZED

Here, Plaintiffs do not allege a concrete injury.  Plaintiffs vaguely assert that, as Passport Members of TSI, they have *per se* suffered an injury because their membership did not provide them with "all access" to TSI's gyms.  Compl. ¶ 38.  However, Plaintiffs fall woefully short of identifying a concrete or particularized claim as required under *Spokeo*.  To have standing, Plaintiffs must have been affected in a personal and individual way.

Here, Plaintiffs suffered no monetary injury.  Their Passport Memberships, have lost no readily ascertainable value.  Plaintiffs pay the same dues and have access to more TSI clubs today than they did when they agreed to become members.  Even if Plaintiffs agreed to pay the additional fee, Plaintiffs were given access to Elite Clubs of a higher quality than the TSI Clubs they previously received access to.  In short, Plaintiffs received value in exchange for their payment of money and cannot claim a concrete injury.

Nor did Plaintiffs suffer an invasion of a legally protected interest.  The fact that TSI requires a fee for access to Elite Clubs does not deprive Plaintiffs of their ability to exercise at a gym altogether.  In 2017, Plaintiffs were still permitted to access TSI clubs, including Elite Clubs for a nominal fee.  If Plaintiffs were dissatisfied upon learning of the required additional fee, they were free to cancel their at-will membership agreements with TSI *at any time*.  However, none of them did so.  Further, TSI's launch of its Elite Clubs did not prevent Plaintiffs from contracting with other health club service providers for access to any of the thousands of gyms both within and outside of New York.

Additionally, these New York resident Plaintiffs do not have standing to assert claims with regard to any TSI location outside of New York or under any other state's law.[11] Plaintiffs fail to allege that they were actually denied access or paid any additional fee to access any particular TSI location at any specific date, time or location – with the except of the New York locations. Accordingly, with regard to these locations, they did not suffer harm as required under *Spokeo*. Plaintiffs essentially set forth the rejected argument in *Lujan*, that they will be monetarily injured at some *indefinite future time* in those states – the *Lujan* Court found this argument speculative and this Court should do the same. Moreover, Plaintiffs have failed to even identify Elite Clubs that require an additional fee for access in any state other than Massachusetts and it is undisputed that no Plaintiff attempted to visit any Massachusetts Elite Club. Accordingly, there can be no standing to bring claims on behalf of Plaintiffs or putative class members with regard to these locations or under these states' laws.[12]

**B.    THERE IS NO CAUSAL RELATIONSHIP BETWEEN PLAINTIFFS' ALLEGED INJURY AND TSI'S CONDUCT**

Further, Plaintiffs' Complaint should be dismissed under *Spokeo* because no injury can be fairly traced to the challenged action of TSI. Plaintiffs allege, albeit generally, that TSI misled Plaintiffs by representing that Passport Memberships included indefinite, unfettered, all-access to TSI clubs. As a result, Plaintiffs allege that TSI caused them to suffer monetary damages, such as "increased membership costs based on promised all-access that was not provided, the value of the services withheld and the fees paid to TSI for access to the Inaccessible Clubs." Compl. at ¶ 58. Here, a *loss* has not occurred at all. Plaintiffs received

---

[11] This case is not ripe for judicial review for the same reason. Plaintiffs cannot speculate TSI's conduct will violate the law. This matter only becomes ripe when additional fees are charged in states outside of New York and Massachusetts.

[12] TSI notes that Plaintiffs seek to represent a class of similarly situated individuals, but allege violations of nine separate consumer protection statutes, all with unique and uncommon requirements, individualized for each State. Hence, TSI notices the court that, as currently pleaded, Plaintiffs' claims simply cannot satisfy the commonality prong required for class certification as there are no common questions of law.

precisely what was bargained for: access to all TSI clubs subject to TSI's discretion to charge additional fees for Elite Clubs.

Moreover, if TSI were to permit access to its high-end, luxury Elite Clubs, Plaintiffs' contractual benefits would be akin to a windfall.  When each Plaintiff contracted to become a Passport Member, TSI gyms were operating at a lower standard.  Equipment was not as pristine or state-of-the-art as the equipment in the Elite Clubs.  Having anticipated such improvements and want for expansion, TSI bargained for the inclusion of Section 2.2 in the agreements. Nonetheless, Plaintiffs argue that they are entitled to these above-standard clubs for the same cost as their initial Passport Membership.  Under this theory, TSI would never be able to sell a higher quality product and would be forced to remain stagnant in the competitive health service market.  Certainly, for example, when a consumer purchases a general admission plane ticket, the consumer cannot reasonably expect that ticket to give them license to sit in first class. Similarly, purchasing a general admission concert ticket does not give the purchaser all-access backstage passes.[13]  Plain and simple, Plaintiffs here bargained for access to gyms equivalent to the standard TSI clubs in existence at contract.  They did not bargain for access to luxurious gyms, which are more expensive for TSI to build, maintain, furnish, and staff.  Thus, the difference between pre- and post-2017 Passport Memberships does not result in a measurable loss.

Further, although Plaintiffs presuppose a causal link between TSI's alleged conduct and the aforementioned harm.  TSI's conduct did not induce Plaintiffs into continuing their memberships, as Plaintiffs, who were already members, could terminate their agreements at any

---

[13]  Examples of this type of "tiered" purchase abound.  For example, a purchaser of a vehicle contracts for the base vehicle, not the fully-loaded luxury model.  Cable television subscribers are entitled to "all-access" **to the channels they paid for** – not necessarily the full channel lineup available.

time.  These undisputed facts eviscerate any causal link between the alleged misconduct and resulting harm.

It is undisputed that, when TSI allegedly represented that Plaintiffs would be entitled to "all access," this was a true statement – Plaintiffs were indeed permitted to access every tier of TSI club.  Thus, any such  representation by TSI only became a misrepresentation in 2017 -  well after each Plaintiff contracted with TSI.  Thus, for years after each Plaintiff entered into their contract with TSI, each received the benefit of the bargain and were given access to all of TSI's clubs.  As soon as Plaintiffs learned of the changed terms, in 2017, they could have opted to terminate their agreements prior to remitting their next monthly dues.  However, Plaintiffs, with knowledge of the additional fee, ***chose to continue*** their at-will Passport Memberships, rather than cancelling with no penalty.[14]  Accordingly, TSI has not fraudulently induced Plaintiffs at any stage during their memberships.  Plaintiffs' choice to continue paying their dues to maintain their memberships eviscerates any causal connection.

In short, TSI's conduct did not amount to a misrepresentation as alleged in the Complaint.  Accordingly, no harm could flow from TSI's lawful conduct.

### POINT III

### PLAINTIFFS' CLAIMS FAIL BECAUSE TSI PERFORMED UNDER THE APPLICABLE CONTRACTS

Plaintiffs assert breach of contract claims that are deficient and implausible, and therefore, must be dismissed.  To establish a claim for breach of contract, Plaintiffs must allege: (1) the existence of valid agreements; (2) the agreement was fully performed by Plaintiffs; (3) TSI failed to perform; and (4) resulting damages.  *Noise in The Attic Prods., Inc. v London Records*, 10 A.D.3d 303 (1st Dep't. 2009).

---

[14] Plaintiffs admit that TSI unilaterally terminated their contracts only after the instant lawsuit was filed. Accordingly, Plaintiffs willingly paid their monthly dues after learning of the changed terms.

In this case, Plaintiffs' allege two theories of liability for TSI's alleged contractual breaches.  First, Plaintiffs collectively allege that TSI failed to honor the terms of their contracts by changing the terms to deny them access to Elite Clubs, despite their payment of dues for "all access" to any TSI club.  Compl. ¶ 1.  Second, Plaintiffs, with exception to Prielozny and Rosenberg, allege TSI breached their contract with them on an individual basis when TSI unilaterally terminated their membership agreements.  Both claims fail as a matter of law.

## A.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

TSI has not breached their contracts with Plaintiffs because TSI acted within the terms of the agreement by charging additional fees for access to the Elite Clubs.[15]  As a general proposition, to be binding, all parties must consent to a contract's modification.  *See Beaver Emp't Agency v. Noestring, Inc.*, 609 N.Y.S.2d 509, 510 (Civ. Ct. 1993) ("Where there is an absence of mutual assent to a proposed modification the original terms of the contract remain in effect.").    However, Second Circuit courts have found that a party may unilaterally modify a contract where such modification is expressly reserved and contemplated in the original agreement.  *See, e.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 125 (2d Cir. 2012) (unilateral modification terms in original contract bolsters argument that offeree is on inquiry notice of arriving terms); *Fox v. Idea Sphere, Inc.*, 2013 U.S. Dist. LEXIS 42674, at *76 (S.D.N.Y. Mar. 21, 2013) (permitting unilateral modification where "[l]oan [d]ocuments unambiguously authorized modifications and additions to the terms of the loans, including specifically to the amount loaned."); *Micalizzi v. Rumsfeld*, 247 F. Supp. 2d 556, 564 (D. Vt. 2003) (enforcing unilateral modification because such modification was within the scope of the original contract); *see also Mayer v. United Air Lines, Inc.*, 2010 N.J. Super. Unpub. LEXIS 2748, at *11 (Super.

---

[15] As a threshold matter, the validity of each agreement is not in dispute.

Ct. App. Div. Nov. 15, 2010) ("unilateral modification of a contract is permissible, provided that the party imposing the change expressly reserved the right to do so.").

Here, Plaintiffs' entire dispute is contractual in nature: that TSI's conduct of changing the terms of the Passport Membership agreements was deceptive.   However, the most glaring omission from the original agreements is any provision providing Plaintiffs with unfettered access to all present and future TSI clubs.   In other words, there is no contractual basis supporting Plaintiffs' alleged right to access all TSI Clubs.   Plaintiffs are essentially alleging that TSI changed terms that do not exist.   On the contrary, the agreements do contain provisions that expressly reserve TSI's right to designate certain clubs as premium.   Passport Members are permitted to access all TSI clubs, except for those designated as Premium.[16]   From the plain language of the agreements alone, TSI has not breached its contracts with Plaintiffs.

Even assuming that TSI's alleged oral representations that Passport Members could access all present and future TSI gyms somehow became incorporated into the agreements, the parties specifically contemplated unilateral modification.   Sections 2.2 and 4.14 reserve TSI's right to unilaterally change such terms.   Section 2.2 gives TSI the contractual right to charge fees for clubs that are outside of the Passport Membership privileges.   Additionally, Section 4.14 reserves TSI's right to change the rules of the club, which are incorporated into each Plaintiff's agreement by reference:[17]   Finally, and most importantly, while TSI cannot alter the monthly dues, Section 1.4 reserves TSI's right to adjust any membership fees.   Taken together, TSI has not breached its contracts with Plaintiffs.

Under the authority provided by these specific terms, as of 2017, TSI "adjusted the fees"

---

[16] To the extent that Plaintiffs claim that "Premium" and "Elite" are two different tiers of health club, that is a mere semantic difference and should not form the basis for the claims here.
[17] Each Plaintiff has acknowledged in their agreements that they have "received and will comply with the rules and regulations of TSI."   *See* Siachos Decl., Exhibit B.

for access to the Elite Clubs located in New York by beginning to charge a nominal access fee. Plaintiffs cannot later claim that, despite Sections 2.2, 4.14, and 1.4, Passport Memberships are forever endowed with access to every future TSI Club, including those with higher quality equipment, services, and amenities.  Such a proposition would certainly constrain TSI's ability to develop its company, change its business model, and expand its accessibility to its consumers. Establishing various membership levels is indeed commonplace among corporations offering gym services.[18]  Accordingly, TSI has not breached their contracts with Plaintiffs and Plaintiffs' claim should appropriately be dismissed.

**B.   PLAINTIFFS INDIVIDUALIZED CLAIMS FOR BREACH OF CONTRACT UNDER A RETALIATION THEORY FAIL AS A MATTER OF LAW**

Similarly, Plaintiffs' individual breach of contract claims fail as a matter of law. Plaintiffs allege that TSI has breached its contract by refusing to provide them with access to any TSI Club in retaliation to their filing of the instant lawsuit.  However, the plain language of each agreement reads in its entirety as follows:

> **2.4     Revocation of Membership.**  At the discretion of TSI, a membership may be revoked at any time or extension of a membership may be denied *if in the reasonable judgment of TSI the member consistently failed to observe the rules and regulations or has otherwise behaved in a manner contrary to the best interests of the club(s) or the club(s) members.*

Compl. at ¶ 154.  As the provision clearly articulates, and Plaintiffs emphasize, any decision to revoke a member's membership may be made at TSI's sole discretion, subject to a "reasonable" standard.  Here, TSI determined, within its reasonable judgment that, while exercising at TSI's Clubs, Plaintiffs were "rabble-rousing," and behaving in a manner that was detrimental to the club, driving TSI customers away.  Thus, it was well within its rights to terminate their

---

[18] For example, 24 Hour Fitness offers its members "Single-Club;" "Super-Sport;" or "Ultra-Sprort" levels of membership.  *See* 24 Hour Fitness, Membership Options, available at https://www.24hourfitness.com/membershipSalesOnline/pos/large?execution=e2s1 (last accessed, April 26, 2018).

memberships.  Moreover, while at TSI's clubs, Plaintiffs have been mining for other class reps. Upon information and belief, Plaintiffs have recruited several TSI members to join the instant lawsuit while exercising at their club.  Again, this is the type of behavior that is within TSI's rights to eradicate by terminating the Plaintiffs' memberships.

Further, there is no legal basis for a supposed "retaliation" claim.  Plaintiffs have brought a lawsuit against TSI, asserting claims that TSI argues are utterly frivolous.  Even this Court stated in its April 18, 2018 Order that "the probability that plaintiffs will prevail on the merits is poor."  *See* Siachos Decl. Exhibit F.  Consumers misusing remedial statutes to make frivolous or specious claims are not a protected class in any state.  Moreover, the terminations were permitted by Paragraph 2.1, referenced above, and within their rights under common law.  Accordingly, TSI did not breach their agreement with Plaintiffs when it terminated their memberships and the claim for "retaliation" must be dismissed.

## POINT IV

## PLAINTIFFS' FRAUD-BASED CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs are attempting to disguise what amounts to a breach of contract claim as a fraud claim, asserting consumer fraud claims under the law of nine different states (Counts I-IX). However, this matter amounts to nothing more than a mere contract dispute, requiring this Court to delve no further than the language contained in the Passport Membership contracts.  "A fraud claim that is essentially a breach of contract claim should be dismissed."  *G2 Entm't LLC v. Tractenberg & Co. LLC*, 2012 NY Slip Op 33457(U), ¶ 10 (Sup. Ct.). ("[t]he addition of an allegation of scienter will not transform a breach of contract action into one to recover damages for fraud"); *Direct Cabinet Sales, Inc. v. A-1 Tech., Inc.*, 2013 NY Slip Op 32102(U), ¶¶ 5-6

(Sup. Ct.) (same).  Accordingly, Plaintiffs fraud-based claims should be dismissed as a matter of law.

## A.    PLAINTIFFS' FRAUD CLAIMS FAIL AS A MATTER OF NEW YORK LAW[19]

Further, Plaintiffs fraud claims are deficiently pleaded and should be dismissed as a matter of law.  Generally, to plead a fraud claim in New York, a plaintiff must plead with particularity "(1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance."  *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 482 (S.D.N.Y. 2015).  Plaintiffs' fraud claims are deficient because they fail to plead such claims with particularity and fail to plead the required *prima facie* elements.

### 1.    Plaintiffs Fail to Satisfy the Heightened Pleading Standard of FRCP 9(b)

In a diversity action where state law governs fraud claims, such as here, the heightened pleading requirements of Fed. R. Civ. P. 9 (b) apply.  *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d at 482.  To plead with particularity, Plaintiffs must allege that: (1) TSI made a false representation to Plaintiff; (2) TSI knew of the falsity or was recklessly indifferent to the truth of the representation; (3) TSI intended to defraud Plaintiff; (4) Plaintiff justifiably relied upon the misrepresentation; and (5) Plaintiff was injured.  *See Kottler*, 607 F. Supp. 2d at 462.  As set forth herein, the Amended Complaint lacks the precision and adequate substantiation required under Rule 9(b).

Most significantly, Plaintiffs woefully fall short of the specificity required in pleading a fraud claim.  Plaintiffs do not plead the time and date they visited each Elite Club, including New York clubs, when and where they received TSI's alleged misrepresentation, who provided

---

[19] Because all conduct occurred in New York, including execution of contract, the alleged misrepresentations, the charging of additional fees, etc., New York is the only law that this court should apply.

Plaintiffs with the misrepresentation, or how Plaintiffs were harmed from such misrepresentation. Rather, Plaintiffs merely restate the elements of a fraud claim. Accordingly, Plaintiffs fail to satisfy the heightened pleading standard and their fraud claims must be dismissed.

### 2.    Plaintiffs Fail To Plead A False Representation Of Fact

In support of their fraud claims, Plaintiffs allege that Plaintiffs relied on TSI's "misrepresentations that Passport Membership would provide all-access to any TSI club at any time . . . in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis." *See* Compl. at ¶ 182, 188, 195, 201, 207, 213, 219, 225, 231. These allegations are directly contradicted by the facts pleaded in Paragraphs 60 through 135, which establish that all but one Plaintiff purchased his or her membership well before the Elite Clubs were upgraded and required an additional fee. As such, TSI's representations that induced Plaintiff to purchase their Passport Memberships were truthful, as such memberships gave members all access.

However, Plaintiffs meagerly attempt to morph these facts to fit a claim for fraud by alleging TSI's representation *later became* a misrepresentation when TSI began to require an additional fee for access to the Elite Clubs. Such representation, according to Plaintiffs, later induced them to *continue* to remit their monthly dues. However, Plaintiffs are parties to an at-will agreement, which allows either side to terminate at any time. Indeed, all parties contemplated such additional fees, as the Passport Membership agreements conspicuously provide that additional fees may apply for certain clubs and gives TSI the right to change the fee structure.

Nonetheless, Plaintiffs had access to all TSI gyms, in some instances, for as long as 16 years. At the time of contract, TSI's alleged representations were truthful. Changing the terms

on a later date make TSI's representations no less truthful, especially in light of the contractual language giving TSI this right.  Plaintiffs could have terminated their Passport Memberships upon TSI's exercising its right to implement additional fees, but did not.  Every Plaintiff opted to continue paying dues and utilizing TSI's gym services.  Alternatively, rather than a unilateral contract modification, the change in terms can be perceived as a new offer, that was accepted upon learning of such additional fees and remitting payment thereafter.  Either way, there is no deceitful conduct here.  Plaintiffs simply fail to allege a false representation of fact to support its numerous fraud claims.

### 3.   Plaintiffs Fail to Establish That TSI Intended To Defraud Them

Finally, Plaintiffs fail to establish, or even allege, that TSI intended that Plaintiffs rely to their detriment on the "all-access" representations.  Plaintiffs have taken what amounts to a mere contract claim, and seek to equate it to a fraud claim.  However, Plaintiffs' Complaint is entirely devoid of alleging scienter.  Accordingly, Plaintiffs' fraud claims cannot survive where scienter is a *prima facie* element.  However, Plaintiffs not only fail to plead the scienter element where required, but neither plead facts that would show intent.  In fact, to the contrary, Plaintiffs cite to the Passport Membership agreements with show that TSI openly disclosed and bargained for the right to adjust fees for these precise situations where TSI upgrades its clubs and decides to expand to new consumers.  Accordingly, Plaintiffs fraud claims fail, where scienter is a prima facie element, given the lack of TSI's intent to defraud.

### 4.   Plaintiffs Fail to Allege Injury, Harm, or Ascertainable Loss

Plaintiffs' fraud claims are also deficient because Plaintiffs do not allege an actual injury.  First, there is no measureable value between the price of the Passport Memberships with or without "all access."  Accordingly, there is no ascertainable loss.  As an initial matter, Plaintiffs did not pay or were not charged an additional fee.  In other words, Plaintiffs have suffered

absolutely no monetary loss.[20]  Rather, Plaintiffs argue that because they cannot access 7 out of

the 165 currently operating TSI clubs, the value of their memberships has been diminished.

Plaintiffs juxtapose the value of the Passport Membership at the time-of-contract and post-2017

to assert an ascertainable loss.  However, Plaintiffs approach this in a vacuum.   Plaintiffs

completely ignore that, in the time between their respective contract dates and the launch of Elite

Clubs, new clubs have been erected to which they can access as Passport Members.   In fact,

approximately 15 new clubs were built and are available to passport members between 2016 and

2017 alone.[21]  *See* Compl. at ¶¶ 24-25; Siachos Decl., Exhibit G, at 1.  Relying on Plaintiffs'

logic, as TSI's business grows, a Passport Membership is actually more valuable now than it was

at the time of Plaintiffs' contract dates.  Accordingly, there is no measurable *loss* in value.

Further, Plaintiffs do not specify when each Plaintiff suffered his or her injury, the time

of day, date, or detail of each incident, or the total amount each Plaintiff expended to access a

particular club.  What is still certain, TSI's conduct has not precluded Plaintiffs from exercising

at a gym.  Plaintiffs can exercise at any of the many gyms in New York by becoming a member

of any other health service provider.  Accordingly, Plaintiffs cannot maintain a claim for fraud

because they fail to allege an actual injury with the requisite specificity.

**B.     PLAINTIFFS' N.Y. GEN. BUS. L. § 349 CLAIM FAILS AS A MATTER OF LAW
        AND MUST BE DISMISSED**

Plaintiffs' Complaint fails to adequately plead or allege a misrepresentation or a resulting

injury, thus warranting dismissal of Plaintiffs' N.Y. Gen Bus. L. §349(a) claim.   Under N.Y.

Gen. Bus. L. §349 (a), "[d]eceptive acts or practices in the conduct of any business, trade or

---

[20] This is in exception to Plaintiffs Plesser, Pielozny, and Rosenberg, who allege they were charged "$20 via [their] credit card on file for each time [they] visited" and Elite Club.  However, none of those Plaintiffs plead with particularity how many times they visited, when they visited, and how many times they were charged.  See Compl. ¶ 145.

[21] Compare TSI's 2016 Annual Report, cited by Plaintiffs, and its 2017 Annual Report.  *See* Siachos Decl., Exhibit G.

commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. Gen. Bus. L. §349 (a).  In order to properly allege a claim under Section 349, a plaintiff must plead facts that tend to prove "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000); *see also Siegel v. Landy*, 2006 NY Slip Op 8235, ¶ 2, 34 A.D.3d 556, 557, 824 N.Y.S.2d 404, 406 (App. Div.); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666 (S.D.N.Y. 2000).

### 1.   TSI Did Not Mislead Plaintiffs In A Material Way

When determining whether a particular representation or omission is deceptive, courts impose a standard of whether a practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Stutman*, 95 N.Y.2d at 29.  Additionally, the alleged deception must have misled the consumer in a material way.  *See Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, 2015 NY Slip Op 25274, ¶ 5, 49 Misc. 3d 1027, 1039, 19 N.Y.S.3d 850, 859 (Sup. Ct.) (holding that defendants statements in a privacy policy and online notices did not mislead plaintiffs in a material way because the statements did not amount to an unlimited guaranty to protect patient information, thus the defendants' conduct was not deceptive when the information was stolen).

Plaintiffs cannot prevail on their Section 349 claim because Plaintiffs received access to all TSI clubs after becoming members.  TSI's Elite Clubs began to charge additional fees as of 2017, after all Plaintiffs, except for one, were members.  When the fee was implemented, TSI made clear through its website and advertisements that Elite Clubs cost members an additional

fee.[22]  *See* Siachos Decl., Exhibit C.  Like in *Abdale*, where the court found a privacy policy that was not an unlimited guaranty given the policy's qualifying language was not materially misleading, Plaintiffs here relied on alleged "all-access" representations despite numerous qualifiers contained in contractual agreements, advertisements and TSI's website.  In other words, a contract giving TSI the right to charge an additional fee to access less than 5% of its clubs at some far-off later date is not *material* under Section 349.  Moreover, Plaintiffs had access to all TSI clubs from the time of contract to until 2017.  As such, TSI's alleged representations were not misleading, let alone in a material way.

### 2.  Plaintiffs Do Not Plead An Actual Injury

Plaintiffs' Section 349 claim is woefully deficient for lack of cognizable injury.  A plaintiff must "prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm."  *See Stutman*, 95 N.Y.2d at 29; *see also Ovitz v. Bloomberg L.P.*, 2012 NY Slip Op 2249, ¶ 4, 18 N.Y.3d 753, 759: *Vigiletti v. Sears, Roebuck & Co.*, 2007 NY Slip Op 6110, ¶ 1, 42 A.D.3d 497, 498, 838 N.Y.S.2d 785, 785 (App. Div.); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).[23]  Here, Plaintiffs claim no monetary loss other than payment of fees that Plaintiffs were contractually obligated to pay.

Plaintiffs have "impermissibly set[] forth deception as both act and injury."  *See Sokoloff*

---

[22] Such documentation is fit for this Court's review under *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 791 (S.D.N.Y. 2011), aff'd sub nom. *Pujals v. Standard Chartered Bank*, 533 F. App'x 7, 9 (2d Cir. 2013) ("[t]he Court may properly consider even documents not quoted, incorporated by reference, or attached to the complaint when adjudicating a motion to dismiss if those 'documents are integral to the complaint, meaning that the complaint relies heavily upon the documents' terms and effects, and the plaintiff has actual notice of all the information in the documents and relied upon those documents in framing the complaint.'").  Here, the operative text unequivocally reads: "***Excludes our Elite clubs: The Boston Racquet Club, Waltham, Wellesley, FiDi, Grand Central, 23rd & Park, 91st and 3rd, and our Flagship location: Astor Place*.*"  Additionally, there is an asterisk immediately after the exclusion, indicating that the reader should move his or her attention to the text of the referenced note.

[23] Additionally, the lack of individualized harm or injury precludes class certification due to a lack of common issues to the class.  *See Hazelhurst v. Brita Prods. Co.*, 295 A.D.2d 240, 242, 744 N.Y.S.2d 31, 33 (App. Div. 2002) (denying class certification because in order to "determine if a particular class member was injured," by relying on Brita's representation that its product filters 35 to 40 gallons of water, "it will be necessary to determine whether the class member received 35 to 40 gallons of purified water per filter . . . before replacement.").

*v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 10 (App. Div. 2004) (claims dismissed for lack of justiciable controversy where plaintiff identified no loss other than payment of membership fees, did not claim defendant failed to deliver its contractual services, did not exercise her cancellation rights, and continued to pay dues). Like in *Sokoloff*, Plaintiffs have given Plaintiffs access to all TSI Clubs. After 2017, TSI charged an additional fee for Elite Club access, as contractually permitted. Thereafter, no Plaintiff cancelled their memberships. Further, Plaintiffs do not allege with specificity when they were denied access, paid an additional fee, or how much they paid. Thus, Plaintiffs cannot maintain a claim under Section 349 because they lack standing for failure to allege an actual injury.

## C.   PLAINTIFFS' D.C. CONSUMER PROTECTION PROCEDURES ACT §§ 28-3901 *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Similar to Plaintiffs' N.Y. claim, Plaintiffs have not adequately alleged a misrepresentation by TSI, thus warranting dismissal of Plaintiffs' DCCPPA claim. The DCCPPA prohibits various trade practices, including (1) "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" (2) "represent[ing] that [a] person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have;" (3) "misrepresent[ing] as to a material fact which has a tendency to mislead;" and (4) "fail[ing] to state a material fact if such failure tends to mislead." D.C. Code § 28-3904 (a)-(b), (e), (f). Here, the DCCPPA bears no nexus to the instant facts and therefore does not govern Plaintiffs' claims. As alleged, the named Plaintiffs are residents of New York, not Washington D.C.; and the alleged fraud occurred within New York *only*. *See* Compl. ¶¶ 60-148. Worse, Plaintiffs do not allege that they were denied access to Washington D.C. clubs, paid an additional fee to access Washington D.C. clubs, or even identify Elite Clubs located in clubs in Washington

D.C.  As stated *supra*, Plaintiffs were provided "all access" to TSI's clubs until 2017.  TSI then exercised its contractual right to charge additional fees to Elite Clubs after having made significant improvements and upgrades.  As such, Plaintiffs' DCCPPA consumer fraud claim has no basis in law, fact, or reality.

## D.   PLAINTIFFS' PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW 73 § 201-1 *ET SEQ.* CLAIM MUST BE DISMISSED AS A MATTER OF LAW

Likewise, Plaintiffs' PUTPCPL claim is fatally deficient and is barred by the economic loss doctrine.  The PUTPCPL prohibits unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce.  *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (citing 73 Pa. Stat. § 201–3).  To establish liability under the PUTPCPL, a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) in which a plaintiff justifiably relies, and (3) that causes an ascertainable loss.  *See id.* (citing *Seldon v. Home Loan Servs.*, 647 F.Supp.2d 451, 470 (E.D. Pa.2009).  Here, Plaintiffs cannot meet any of the *prima facie* elements to defeat dismissal.

### 1.   Plaintiffs Do Not Plead The *Prima Facie* Elements Required

Plaintiffs PUTPCPL claim is legally deficient because it fails to allege justifiable reliance.  To bring a private cause of action under the PUTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).  Evidence of reliance must go beyond a mere causal connection between the misrepresentation and the harm; a plaintiff must "show that he justifiably bought the product in the first place (or engaged in some

other detrimental activity) because of the misrepresentation." *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, No. 12–6542, 2013 WL 3380590, at *6 (E.D. Pa. July 8, 2013).

In this case, Plaintiffs have failed to even attempt to allege the required elements under Pennsylvania law.  Instead, Plaintiffs' Complaint alleges in conclusory fashion that "Passport Members have not been and are currently not permitted access to numerous TSI locations . . . ." Compl. ¶ 48.  First, Plaintiffs fail to plead that TSI committed a deceptive act likely to deceive consumers.  TSI made accurate representations to Plaintiffs when the contracted for Passport Memberships.  TSI's representations became no less accurate when it began to charge additional fees, as it acted pursuant to the contractual terms.  Second, Plaintiffs did not justifiably rely on TSI's representations.  It is clear that, had Plaintiffs truly relied on TSI's representations, they would have each cancelled their at-will membership agreements upon learning of the additional fees.  Third, Plaintiffs utterly fail to plead a causal nexus between TSI's conduct and any ascertainable loss.  Further, Plaintiffs cannot point to an ascertainable loss simply by pointing to the payment of contractual dues or fees.  As stated above, the growing number of TSI clubs likely add value to Passport Memberships.  Accordingly, Count III of Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

### 2.     The Economic Loss Doctrine Bars Any Recovery Under the PUTPCPL

Plaintiffs' PUTPCPL claim also fails because it is barred by the economic loss doctrine. Plaintiffs contend that they suffered and continue to suffer damages, including, but not limited to, "fees paid for access to TSI's clubs that was never actually provided and additional fees to TSI for access to the Inaccessible Clubs."  Compl. ¶ 239.  In sum, Plaintiffs claim they paid money to access all of the clubs, but were denied access to some of the clubs after 2017.  Thus, to the extent this Court finds that TSI is liable, Plaintiffs' recovery of monetary damages from 2017 to the present, is sufficient to make them whole.

31

E.   **PLAINTIFFS' CONNECTICUT UNFAIR TRADE PRACTICES ACT, §42-100, *ET SEQ.* CLAIM MUST BE DISMISSED AS A MATTER OF LAW**

Plaintiffs' CUTPA claims fail as a matter of law because TSI's conduct is not unfair under CUTPA and Plaintiffs cannot show an ascertainable loss.  CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b; *see Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 154-155 (2005).  The *prima facie* elements of a properly pleaded CUTPA claim are threefold: "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]."  *Id.*; *see also Zeebaas, LLC v. Koelewyn*, 2012 U.S. Dist. LEXIS 84665, at *17-18 (D. Conn. June 19, 2012).

1.   **Connecticut Law Is Inapplicable**

As an initial matter, Plaintiffs provide absolutely no factual or legal basis as to why this Court should apply Connecticut law.  Plaintiffs neither allege that fraud occurred in Connecticut, nor that any named Plaintiffs were denied access to a Connecticut club.  Furthermore, no Plaintiff is a Connecticut citizen.  No Elite Club is identified as being located in Connecticut.  No representations were made or received in Connecticut.  The CUTPA cannot apply here as Connecticut law is wholly irrelevant.

2.   **Plaintiffs Fail To Plead That An Unscrupulous Act Caused Plaintiffs An Injury Under CUTPA**

Second, the facts, as pleaded in Plaintiffs' Complaint, do not rise to an "unscrupulous act" under CUTPA, requiring dismissal of Count IV.  TSI required an additional fee for Elite

Club access only *after* 2017.  Accordingly, TSI's conduct did not unscrupulously induce Plaintiffs into becoming Passport Members.  Nor did it induce them to continue remitting monthly dues.  Not a single Plaintiff cancelled their memberships upon learning of the additional fee.  Thus, Plaintiffs fail to plead an unscrupulous act and a causal nexus.

### 3.   Plaintiffs Fail To Plead An Ascertainable Loss Under CUTPA

Furthermore, the facts pleaded in Plaintiffs' Complaint fail to show an ascertainable loss.  A plaintiff must show that an ascertainable loss resulted from the alleged deceptive act.  *Zeebas*, 2012 U.S. Dist. LEXIS 84665, at *18; *Golden v. Hamer*, 2009 Conn. Super. LEXIS 2309, at *25 (Conn. Super. Aug. 25, 2009); *see also Three Deer Assocs. v. Yankee Gas Serv. Co.*, 1995 Conn. Super. LEXIS 1314, at *4 (Super. Ct. May 1, 1995).  Here, a *loss* has not occurred at all.  Plaintiffs received precisely what was bargained for: access to all TSI clubs subject to TSI's discretion to charge additional fees for Elite Clubs.  Moreover, if TSI were to permit access to its high-end, luxury Elite Clubs, Plaintiffs contractual benefits would be akin to a windfall.  Thus, the difference between pre- and post-2017 Passport Memberships does not result in a measurable loss.

## F.   PLAINTIFFS' MARYLAND CONSUMER PROTECTION ACT § 13-101, *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

This Court should dismiss Plaintiffs' claim asserted under the MCPA because (1) the alleged fraud occurred outside of Maryland to non-Maryland citizens, (2) Plaintiffs have failed to plead that TSI's conduct was deceptive with enough specificity, and (3) Plaintiffs have failed to adequately plead the scienter requirement.

### 1.   The Alleged Fraud Did Not Occur In Maryland

Plaintiffs cannot sustain a claim under the MCPA because the pleaded facts show that the alleged fraud occurred in New York, not Maryland.  As a threshold matter, the MCPA does not

have extra-territorial effect and applies only when alleged deceptive conduct occurs within Maryland's borders or affects in-state activity. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237 (4th Cir. 2015); *State ex rel. Gildar v. Kriss*, 191 Md. 568, 62 A.2d 568, 569 (Md. 1948); *Consumer Prot. Div. v. Outdoor World Corp.*, 91 Md. App. 275, 287 (1992) (holding that the MCPA does not govern a company's "high-pressure sales tactics" occurring outside of Maryland's borders).

Here, Plaintiffs, all of whom are New York residents, allege that they relied on TSI's representations regarding the sale of thein purchasing their Passport Memberships.  It is undisputed that no Plaintiff is a resident of Maryland; visited any Maryland TSI club; contracted for TSI's services in Maryland; or received TSI's representations in Maryland.  In *Outdoor World*, the plaintiffs received direct solicitations in Maryland. *Id.* at 287.  However, despite the defendant's fraudulent conduct intruding into Maryland borders, the *Outdoor World* Court held that the MCPA did not govern that occurrence.  The instant facts are weaker than those in *Outdoor World* because no events whatsoever occurred in Maryland.  Thus, the MCPA does not govern the instant facts, as the MCPA lacks "extra-territorial effect."

## 2. Plaintiffs Fail To Plead The *Prima Facie* Elements With The Requisite Specificity

Plaintiffs' MCPA claim should be dismissed because Plaintiffs fail to plead that TSI's conduct amounted to a deceptive act that was material to the purchase of Plaintiffs' Passport Memberships with the requisite specificity.  In Maryland, an individual may bring an MCPA claim against any person engaged in an "'unfair or deceptive trade practice' with respect to the sale, or offer for sale, of any consumer goods, services, or realty." *Adams v. NVR Homes, Inc.*, 135 F. Supp. 2d 675, 692 (D. Md. 2001).  "Deceptive act" includes false or misleading statements that have a tendency to deceive or mislead consumers.  MCPA § 13-301; *Adams*, 135

F. Supp. 2d at 692-93.   A statement is considered "material" if "it is likely to affect [the unsophisticated consumer's] decision to buy a product." *Hayes v. Hambruch*, 841 F. Supp. 706, 713 (D. Md. 1994) (quoting *Golt v. Phillips*, 308 Md. 1, 10, (1986)); *Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 359, 726 A.2d 702, 713 (1999).

Here, Plaintiffs merely rely on their conslusory allegations to support their MCPA claim. In sum, Plaintiffs make no mention of the time, place, and contents of the false representations. Further, it is plain that no deception occurred under Maryland's standard because TSI provided Plaintiffs with access to all TSI clubs until 2017.   Thereafter, Plaintiffs chose to continue their memberships after TSI exercised its right to charge a fee under the agreements.   Accordingly, Plaintiffs MCPA claim cannot survive.

### 3.   Plaintiffs Fail To Plead The Requisite Scienter Under Md. Code Ann., Com. Law § 13-301(9)

This Court should dismiss Plaintiffs' MCPA claim because Plaintiffs do not plead that TSI knowingly misrepresented a material fact.   Under § 13-301(9), Plaintiffs are required to prove that a defendant knowingly engaged in "deception, fraud, false pretense, false premise, misrepresentation . . . ." *Adams*, 135 F. Supp. 2d at 693.   Here, Plaintiffs do not allege facts that TSI knowingly made representations likely to affect Plaintiffs' decision to buy a Passport Membership.   TSI implemented an additional fee for access to Elite Clubs in order to offer a luxurious club experience at a fraction of the cost of the luxury clubs of their competitors, not to trick its old members into continuing to pay their monthly dues.   Plaintiffs MCPA claims should therefore be dismissed.

### G.   PLAINTIFFS' NEW JERSEY CONSUMER FRAUD ACT, §56:8-1, *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiff's NJCFA claim must be dismissed because the NJCFA is inapplicable and Plaintiffs cannot establish the unlawful conduct, materiality, or ascertainable loss elements.   A

private plaintiff also must plead with specificity facts showing that (1) the defendant's conduct was unlawful; (2) was material in a way that induced the buyer to make the purchase; and (3) that such conduct caused an "ascertainable loss" to the plaintiff.[24]  *See Am. Corp. Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 89 (3d Cir. 2011); *Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 112 (Super. Ct. App. Div. 2009); *see also Joaquin v. Lonstein Law Office, P.C.*, 2017 U.S. Dist. LEXIS 99466, at *3 (D.N.J. June 27, 2017) (dismissing for failure to allege the defendant's representations were made to induce plaintiff to subscribe to DirecTV.").  As discussed in greater detail below, this claim must be dismissed.

1.     **The New Jersey Consumer Fraud Act Is Inapplicable**

Plaintiffs have no cause of action under the NJCFA merely because a TSI club is located in that state.  Because Plaintiffs yet again fail to specify the applicability of New Jersey Law, their NJCFA claim should be dismissed.

2.     **Plaintiff Cannot Establish Unlawful Conduct Material To Plaintiffs' Transaction**

Plaintiffs' NJCFA claim must fail because they have not and cannot plead that TSI engaged in unlawful conduct that would induce Plaintiffs to purchase a product. *See DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 430 N.J. Super. 325, 339 (Super. Ct. App. Div. 2013) (rejecting NJCFA claim because alleged misrepresentations were made by collections agency, not to induce a purchase); *Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135, 144 (App. Div. 2005)  (rejecting NJCFA claim because representations allegedly made by defendant were not made to induce a purchase).  First, TSI committed no fraudulent because (1) Plaintiffs

---

[24] There are three categories of liability under the NJCFA: affirmative misrepresentations, intentional omissions, and conduct prohibited by statute.  *See Friest v. Luxottica Grp. S.P.A.*, 2016 U.S. Dist. LEXIS 174955, at *10 (D.N.J. Dec. 16, 2016); *see also Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (N.J. 1994).  Plaintiffs' NJCFA claim is further deficient for failing to specifically categorize TSI's allegedly unlawful conduct.

purchased their Passport Memberships well before the Elite Clubs existed and (2) as part of the bargained-for Passport Membership agreements, TSI reserved the right to charge additional fees. Second, Plaintiffs' NJCFA claims fail because the alleged conduct was not material to a transaction.  Before 2017, TSI's representation was not false.  Further, had the "future" portion of the alleged representation been a material aspect of Plaintiffs' decision, each Plaintiff would have exercised their contractual right to terminate upon learning of the additional fee.  However, none of them did.   Accordingly, the additional fee did not affect their decision to *purchase* or *continue* their memberships.

### 3.    Plaintiffs Cannot Plead That They Suffered An Ascertainable Loss

The NJCFA specifically requires the consumer demonstrate "an ascertainable loss of moneys or property, real or personal" that is either quantifiable or measurable or purely economical.  N.J. Stat. Ann. § 56:8-19 (LexisNexis, 2018); *see also Weinberg v. Sprint Corp*., 173 N.J. 233, 237 (2002) .  New Jersey Courts routinely dismiss NJCFA claims that are predicated on non-economic losses.  *Cole v. Laughrey Funeral Home,* 376 N.J. Super. 135, 144–45  (App. Div. 2005) (holding that (1) a NJCFA claim fails when a misrepresentation is made after the product is already sold and (2) damages for emotional distress are not recoverable as an ascertainable loss).  "[E]ither *out of pocket loss* or a demonstration of *loss in value* will suffice to meet the ascertainable loss hurdle."  *See Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005) (holding that a defective that caused plaintiff's new vehicle to run out of gas was not an ascertainable loss because the car still functioned) (emphasis added).  Significantly, the "out-of-pocket" theory does not apply if, as here, the plaintiff received something of value.  *Id.* at *6.

Plaintiffs do not adequately allege an ascertainable loss under either theory.  Plaintiffs fail to plead the price they should have paid for the Passport Memberships and do not plead the cost of any allegedly comparable membership value.  Rather, Plaintiffs merely state, in conclusory

37

fashion, that they have suffered some unqualified loss by regurgitating the damage element of their cause of action.  In short, they have suffered no monetary loss.  Further, at all times, TSI has provided Plaintiffs with a place to exercise at more locations as of 2017 than at the time of contract.  *See Hoffman v. Hampshire Labs, Inc. and Video Age, Inc.,* 405 N.J. Super. 105 (App. Div. 2009) (no ascertainable loss where there remains value).  Arguably, the Passport Memberships are *more* valuable. Therefore, the facts as alleged in the complaint do not constitute an "ascertainable loss" under N.J.S.A. 56:8-19.

## H. Plaintiffs' RHODE ISLAND UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION ACT, §6-13.1-1, *ET SEQ.* Claim FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiffs have not sufficiently pleaded a RIUTPCPA claim because TSI has not engaged in an unfair practice and Plaintiffs have suffered no ascertainable loss.  The RIUTPCPA "creates a private right of action for consumers who are injured by unfair methods of competition and unfair or deceptive acts or practices."  RIUTPCPA § 6-13-1-1, *et seq.*; *Foraste v. Brown Univ.*, 248 F. Supp. 2d 71, 81 (D.R.I. 2003).  Under RIUTPCPA, Rhode Island Courts consider a trade practice deceptive when the plaintiff establishes "(1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), the representation, omission, or practice is material."  *Long v. Dell, Inc.*, 93 A.3d at 1003 (quoting *F.T.C. v. Verity International, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006)).  Plaintiffs' RIUTPCPA claims fail for the reasons below.

### 1. Rhode Island Law Is Inapplicable

As an initial matter and for the same reasons above, Rhode Island lacks sufficient interest to see its law applied.  Plaintiffs do not allege additional facts that would trigger the application of RIUTPCPA.

## 2. Plaintiffs Have Not Pleaded Facts That Show TSI's Conduct Was Unfair Or Material

TSI's did not engage in unfair conduct that was material to Plaintiffs' purchase of their Passport Memberships.  A representation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.  *Long*, 93 A.3d at 1003.  Here, TSI's conduct was neither deceptive nor material.  As mentioned above, Plaintiffs purchased their Passport Memberships prior to 2017 and failed to terminate their agreements upon learning of TSI's implementation of additional fees.  Further, Plaintiffs would have purchased their Passport Memberships with or without access to Elite Clubs, evident from their failure to cancel such memberships after learning of the additional fee.   Therefore, Plaintiffs' RIUTPCPA claim should be dismissed with prejudice.

## 3. Plaintiffs Cannot Show An Ascertainable Loss

Plaintiffs have failed to plead an ascertainable loss under RIUTPCPA.  A plaintiff is required to show "'ascertainable losses of money or property, real or personal,' caused by a deceptive act or practice in connection with the purchase or lease of goods or services primarily for personal use."  *Laccinole v. Twin Oaks Software Dev., Inc.*, 2014 U.S. Dist. LEXIS 73879, at *23-24 (D.R.I. May 1, 2014).  Here, Plaintiffs have not shown an ascertainable loss because they can not and do not point to a quantifiable difference between pre- and post- 2017 Passport Memberships.   Plaintiffs have access to the same class of TSI clubs they bargained for.  Moreover, Plaintiffs have access to *more* TSI clubs post-2017 than they bargained for.  Hence, Plaintiffs' Passport Memberships are no less valuable due to TSI's rebranding of Elite Clubs.  Without an ascertainable loss, Plaintiffs' RIUTPCPA claim should be dismissed.

## I. PLAINTIFFS' VIRGINIA CONSUMER PROTECTION ACT OF 1977, §59.1-196, *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiffs VCPA claim fails because Plaintiffs rely on a representation that was factually

accurate and did not suffer a loss.   The VCPA prohibits specific 'fraudulent acts or practices committed by a supplier in connection with a consumer transaction' *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005); *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 498 (2014).   "[I]n order to sustain a claim under the VCPA, a plaintiff must prove that the defendant acted with an intent to deceive or otherwise mislead, i.e., with fraudulent intent, as to a material fact *on which the plaintiff relied to his detriment* and which resulted in measurable damages." *Cooper*, 334 B.R. at 188; *see also Owens*, 288 Va. at 498.

### 1.    <u>Virginia Law Is Inapplicable</u>

Similar to the arguments above, the VCPA does not apply here because Plaintiffs do not allege that they visit any TSI Club in Virginia, that they were charged fees to access any TSI Club in Virginia, that they were denied access to any TSI Club in Virginia, or that an Elite Club even exist in Virginia.   Accordingly, Virginia Law should not be applied and Plaintiffs VCPA claim should be dismissed.

### 2.    <u>Plaintiffs Do Not Plead Facts Sufficient To Meet The Reliance And Intent Requirements</u>

Plaintiffs fail to plead that Plaintiffs relied on an intended misrepresentation.   Plaintiffs were induced to purchase their memberships by accurate statements.   Plaintiffs agreed to terms that grant TSI the authority to require additional fees.   Plaintiffs did not rely on TSI's representations because they did not cancel their memberships after learning of the additional fee.   Further, no facts suggest with the requisite specificity that TSI intended to induce Plaintiffs' purchase through any misrepresentation, especially considering TSI made no misrepresentations. Thus, Plaintiffs' VCPA claim should be dismissed with prejudice.

### 3.    <u>Plaintiffs Suffered No Loss As A Result Of TSI's Conduct</u>

Plaintiffs received nothing less than what they bargained for and have not suffered a loss.

In order to sufficiently plead a claim under VCPA § 59.1-204 (A), a plaintiff must allege that he or she suffered a loss.  *See Polk v. Crown Auto, Inc.*, 228 F.3d 541, 543 (4th Cir. 2000).  Here, there is, quite literally, no difference in the Passport Membership's value.  Plaintiffs pay the same membership dues.  Further, the agreements specify that TSI can modify its fees.  Plaintiffs cannot later claim that the modified fees that they agreed to pay each time they opt to continue their at-will agreement amounts to a loss.  Accordingly, Plaintiffs suffered no loss.

## J.  PLAINTIFFS' MASSACHUSETTS CONSUMER PROTECTION ACT, M.G.L.A. C. 93A §§ 1 *ET SEQ.* CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiffs cannot prevail on their Mass. Ann. Laws ch. 93A claim because (1) Plaintiffs did not deliver a thirty-day notice to TSI before bringing their claim; (2) TSI did not engage in deceptive conduct in Massachusetts; and (3) Plaintiffs fail to plead the *prima facie* elements of a 93A claim.  Under Massachusetts law, it is unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Chenlen v. Philips Elecs. N. Am., 20 Mass. L. Rep. 652*.  An act is deceptive under Massachusetts law when "it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Id.*; *see also Brennan v. Carvel Corp.*, 929 F.2d 801, 812 (1st Cir. 1991).

### 1.  <u>Massachusetts Law Is Inapplicable</u>

Chapter 93A is inapplicable as a matter of law where, as here, alleged deceptive conduct occurred primarily and substantially outside of Massachusetts.  *See, e.g.*, *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 47 (1st Cir. 2001); *see also Picker Int'l v. Leavitt*, 865 F. Supp. 951, 970 (D. Mass. 1994).  In assessing the applicability of Chapter 93A, Massachusetts law requires courts to determine "(i) where the defendant committed the alleged deception; (ii) where plaintiff was deceived and acted upon the deception; and (iii) the situs of plaintiff's losses

stemming from the deception."  *Id.*  Here, the Complaint must be dismissed because none of the conduct asserted in Plaintiffs' Complaint occurred in Massachusetts.  Accordingly, Plaintiffs 93A claims should be dismissed.

### 2.    Plaintiffs Did Not Comply With The Thirty-Day-Demand Prerequisite

In order to promote negotiation and settlement, Chapter 93A requires that "[a]t least thirty days prior to the filing of any such action, a written demand for relief . . . shall be mailed or delivered to any prospective respondent."  Mass. Ann. Laws ch. 93A, § 9 (LexisNexis, 2018); *Tarpey v. Crescent Ridge Dairy, Inc.*, 47 Mass. App. Ct. 380, 391, 713 N.E.2d 975, 983 (1999). The thirty-day-demand requirement is "not merely a procedural nicety, but, rather, a 'prerequisite to the suit.'"  *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (dismissing the plaintiff's 93A claims where neither the complaint nor the documents attached thereto mention any such notification); *Peterson v. GMAC Mortg., LLC*, No. 11-11115-RWZ, 2011 U.S. Dist. LEXIS 123216, at *17 (D. Mass. Oct. 25, 2011) (holding that Plaintiff's claims failed procedurally where it was undisputed that no demand letter was sent).  Here, Plaintiffs have not only failed to *allege* that they have complied with the thirty-day-demand prerequisite, but they failed to *comply* with it as well.  Plaintiffs do not allege that they sent a thirty-day-demand to TSI.  Further, TSI did not receive a thirty-day-demand from Plaintiffs until well after they filed the instant lawsuit.  Plaintiffs' 93A claims must therefore be dismissed.

### 3.    Plaintiffs Do Not Plead The Requisite Elements With Specificity

"In order to prevail on a claim under ch. 93A, 'a plaintiff must establish both that an unfair or deceptive act or practice has been committed and that the commission of that act or practice has caused him an injury."  *See Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 634 (2008); *Lord v. Commercial Union Ins. Co.*, 60 Mass. App. Ct. 309, 317 (2004); *Vaughn v. AAA*, 326 F. Supp. 2d 195, 199 (D. Mass. 2004).  Further, a plaintiff must show a "causal connection

42

between the deception and the loss and that the loss was foreseeable as a result of the deception." *Lord*, 60 Mass. App. Ct. at 317.  "A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A . . . ." *Vaughn*, 326 F. Supp. 2d at 199.

First, Plaintiffs fail to allege with particularity that TSI's conduct was deceitful.  Indeed, TSI fulfilled its contractual obligations.  Plaintiffs do not detail any conversations they had which led them to understand members had "all access" to current and future TSI clubs.  Second, Plaintiffs fail to allege with specificity the circumstances surrounding their injury.  The Plaintiffs do not allege precisely when or how much they paid to access Elite Clubs or who denied them access and to which Massachusetts Clubs.  Further, without having personally been denied access or charged an additional amount to access Massachusetts TSI clubs, Plaintiffs did not suffer an injury as required under Chapter 93A.  Such sparse allegations cannot survive this motion.

## POINT V

## PLAINTIFFS' RETALIATION CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiffs' retaliation claim fails as a matter of law because New York does not provide Plaintiffs with a cause of action, nor do Plaintiffs specify the authoritative basis for their claim.  Rather, Plaintiffs are merely reasserting their individual fraud claims, alleging that such "retaliation" amounts to deceptive act.  As stated above, it was within TSI's contractual right and their sole discretion to terminate Plaintiffs' Passport Memberships.  Accordingly, such a claim is also repetitive of Plaintiffs' breach of contract claim, and should be readily disposed of.  TSI appropriately exercised their right to terminate Plaintiffs' agreement for engaging in conduct detrimental to the club.

Plaintiffs do not allege facts that would prove TSI terminated Plaintiffs' Passport

Memberships solely because of the fact that they filed the instant lawsuit.  In fact, TSI continued to permit Plaintiffs' access to TSI clubs even after they filed their lawsuits.  It was only after TSI observed Plaintiffs actively recruiting class members while exercising at TSI Clubs that it decided to exercise its contractual right to terminate.  Nevertheless, even if the sole reason for termination were the filing of the instant lawsuit, filing meritless claims to damage TSI's reputation reasonably qualifies as detrimental conduct.  Plaintiffs only seek to pile on to their already monotonous Complaint by asserting unsupported causes of action.  Accordingly, Plaintiffs "retaliation" claim should be dismissed.

## POINT VI

## PLAINTIFFS' *PRIMA FACIE* TORT CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiffs' fail to allege a prima facie tort claim.  To plead a *prima facie* tort claim, a plaintiff in New York must allege "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful."  *Goodfellow v. Allstate Indem. Co.*, No. 14-CV-642S, 2014 U.S. Dist. LEXIS 177835, at *6 (W.D.N.Y. Dec. 27, 2014) (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-43 (1985)).  Further, a plaintiff must allege that malevolence was the sole motive for the defendant's otherwise lawful act.  *Id.*  Thus, a prima facie tort claim will not survive a motion to dismiss where other motives, "such as profit, self-interest, or business advantage," drove the defendant's actions.  *Bear, Stearns Funding, Inc. v. Interface Grp. -- Nev., Inc.*, 361 F. Supp. 2d 283, 307 (S.D.N.Y. 2005).  Further, "in order to commit a prima facie tort, the tortfeasor must act with an intent 'unmixed with any other and exclusively directed to injury and damage of another.'"  *Id.*  A prima facie tort "is not a catch-all alternative for every cause of action which cannot stand on its own."  *Id.*

44

Plaintiffs' Count XIII can be easily disposed of and is impermissibly pleaded as a "catch-all" alternative.   Plaintiffs allege that TSI committed an intentional tort of "retaliation" by terminating Plaintiffs' membership agreements.   However, Plaintiffs fail to allege that TSI intentionally inflicted harm upon them or that they were harmed at all.   Plaintiffs are not being deprived of their ability to exercise and are free to contract with another gym to do so.   Further, Plaintiffs are no longer required to pay TSI as their memberships were terminated.   Additionally, Plaintiffs cannot sustain their tort claim where self-interest is a motivating factor.   Here, TSI was solely motivated by profit and self-interest, i.e., preventing harm to the TSI's reputation.   This alone precludes Plaintiffs baseless tort claim.   This Court should therefore dismiss Count XIII with prejudice.

<u>**CONCLUSION**</u>

For the reasons set forth herein, TSI respectfully requests the Court dismiss Plaintiffs' Complaint, with prejudice, pursuant to Rules 12 (b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Dated: New York, New York
        June 29, 2018

Respectfully submitted,

**GORDON & REES LLP**
*Attorneys for Defendant Town Sports*
*International, LLC, Town Sports International*
*Holdings, Inc. d/b/a New York Sports Clubs,*
*Boston Sports Clubs, Washington Sports Clubs*
*and Philadelphia Sports Clubs*

By:  */s/ Peter G. Siachos*
            Peter G. Siachos
            Donald Derrico
            Matthew P. Gallo

18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
Tel: (973) 549-2532
Fax: (973) 377-1911
E-mail: psiachos@grsm.com

46