**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- X

JOSHUA BILMES, SAMANTHA FAHY, BARI    :
LASKY, ELIZABETH PLESSER, PETR     :
PRIELOZNY, VADIM TERNOVSKI, and    :    Civil Action No. 18-cv-1737 (LLS)
HELENA VON ROSENBERG,         :
                                     :
        Plaintiffs, on behalf of themselves  :
        and all others similarly situated,    :    **SECOND AMENDED CLASS**
                                     :    <u>**ACTION COMPLAINT**</u>
        -against-                 :
                                     :
TOWN SPORTS INTERNATIONAL, LLC and   :
TOWN SPORTS INTERNATIONAL HOLDINGS,  :    <u>**Jury Trial Demanded**</u>
INC. d/b/a NEW YORK SPORTS CLUBS,     :
BOSTON SPORTS CLUBS, WASHINGTON    :
SPORTS CLUBS and PHILADELPHIA SPORTS :
CLUBS,                               :
                                     :
        Defendants.                 :
---------------------------------------------------------------- X

       Plaintiffs Joshua Bilmes, Samantha Fahy, Bari Lasky, Elizabeth Plesser, Petr Prielozny,

Vadim Ternovski and Helena Von Rosenberg, on behalf of themselves and the Class (defined

below), allege against Defendants as follows:

<u>**NATURE OF THE CLAIMS**</u>

      1.     New York Sports Clubs is the ubiquitous gym brand that boasts more members

than any other gym across the state.  New York Sports Clubs is owned and operated by Town

Sports International, LLC and/or Town Sports International Holdings, Inc. (together, "TSI"),

which also own and operate Boston Sports Clubs, Washington Sports Clubs and Philadelphia

Sports Clubs.  TSI, through each of these brands, has sold to hundreds of thousands of customers

a "Passport Membership," which it has represented to Plaintiffs and consumers-at-large as

providing "all-access" to use "any TSI club at any time" – including clubs that would open in the

future – in exchange for monthly payments.

2.      TSI never at any point informed Plaintiffs that the right to use "any TSI club at any time" was somehow limited to the TSI gym locations open at the time they became Passport Members.  To the contrary, Plaintiffs and all other Passport Members were informed that the Passport Membership would provide all-access to any TSI gym at any time, even if it opened after they became a Passport Member.  This is demonstrated by the fact that TSI has opened numerous gyms that all Plaintiffs and Passport Members were permitted to use as part of their Passport Memberships even though those locations were not open at the time they became members.

3.      However, TSI abruptly stopped providing Plaintiffs and all other Passport Members with the promised "all-access" to TSI's gym locations in exchange for their monthly membership payments.  Nonetheless, despite no longer granting "all-access" to TSI's gyms, TSI continued to charge Plaintiffs and all other Passport Members the same monthly payment rate without any notification that the terms had changed – *i.e.*, that Plaintiffs and all other Passport Members no longer had all-access to TSI's gyms, including gyms they had previously been permitted to visit as part of their Passport Membership.  Moreover, when Plaintiffs and all other Passport Members went to gyms that they had previously been permitted to use and access, they were either (i) told they were not permitted to enter, (ii) told they would be charged additional amounts to enter the facility, or (iii) secretly and unknowingly charged an entry fee without any notification or approval.

4.      Plaintiffs bring this action seeking declaratory, injunctive and monetary relief, on behalf themselves and the Class, due to TSI's unlawful conduct in violation of New York General Business Law ("GBL") §349; D.C. Consumer Protection Procedures Act §28-3901, *et seq*. ("DCCPPA"); Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73

§201-1, *et seq*. ("PUTPCPL"); Connecticut Unfair Trade Practices Act, §42-110, *et seq*. ("CUTPA"); Maryland Consumer Protection Act, §13-101, *et seq*. ("MCPA"); New Jersey Consumer Fraud Act, §56:8-1, *et seq*. ("NJCFA"); Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq*. ("RIUTPCPA"); Virginia Consumer Protection Act of 1977, §59.1-196, *et seq*. ("VCPA") and Mass. Consumer Protection Act, M.G.L.A. c. 93A §§1, *et seq.*("MGLA") (collectively, the "Consumer Fraud and Protection Statutes"); and/or for engaging in breach of contract as to Plaintiffs and the hundreds of thousands of other current and former Passport Members.

## JURISDICTION AND VENUE

5.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of residence of the named parties.  The Court also has diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), because the proposed Class has more than 100 members, contains at least one member of diverse citizenship from Defendants and the amount in controversy exceeds $5 million.

6.     The Court has personal jurisdiction over Defendants because Defendants are authorized to and conduct substantial business in New York, generally, and in this District, specifically.  Defendants have their headquarters in this District, and Defendants' policies, practices and protocols relating to the issues in the case were made and acted upon within this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because a substantial part of the events giving rise to this action occurred in this District as Defendants' policies and practices were made and acted upon within this District.

8.      On February 26, 2018, Plaintiffs sent to Defendants a demand letter pursuant to Section 93A of the MGLA, thereby satisfying the administrative pre-requisite to commencing a consumer fraud action under Massachusetts law.

9.      On February 26, 2018, Plaintiffs delivered a copy of the Complaint to the Connecticut Attorney General and Commissioner of Consumer Protection pursuant to CUTPA § 42-110g(c).

10.     On February 26, 2018, 2018, Plaintiffs delivered a copy of the Complaint to the New Jersey Attorney General pursuant to NJCFA § 56:8-20.

11.     On February 26, 2018, Plaintiffs delivered a copy of the Complaint to the Rhode Island Attorney General pursuant to RIUTPCPA § 6-13.1-5.2.

## PARTIES

12.     Plaintiff Joshua Bilmes is an adult resident of New York County, New York.  Mr. Bilmes was a Passport Member of TSI from approximately June 30, 2013 through the date on which TSI revoked his membership and/or banned him from TSI clubs.

13.     Plaintiff Samantha Fahy is an adult resident of New York County, New York. Ms. Fahy was a Passport Member of TSI from approximately October 2010 through the date on which TSI revoked her membership and/or banned her from TSI clubs.

14.     Plaintiff Bari Lasky is an adult resident of New York State.  Ms. Lasky was a Passport Member of TSI from approximately October 15, 2015 through the date on which TSI revoked her membership and/or banned her from TSI clubs.

15.     Plaintiff Elizabeth Plesser is an adult resident of New York County, New York. Ms. Plesser was a Passport Member of TSI from approximately March 6, 2013 through the date on which TSI revoked her membership and/or banned her from TSI clubs.

16.     Plaintiff Petr Prielozny is an adult resident of New York County, New York.  Mr. Prielozny was a Passport Member of TSI from approximately 2015 through November 2017.

17.     Plaintiff Vadim Ternovski is an adult resident of New York County, New York. Mr. Ternovski was a Passport Member of TSI from approximately March 17, 2017 through the date on which TSI revoked his membership and/or banned him from TSI clubs.

18.     Plaintiff Helena Von Rosenberg is an adult resident of New York County, New York.  Ms. Von Rosenberg was a Passport Member of TSI from approximately 2006 through 2017.

19.     Defendant Town Sports International, LLC d/b/a New York Sports Clubs is a domestic limited liability company with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 5 Penn Plaza, 4th Floor, New York, New York 10001.

20.     Defendant Town Sports International Holdings, Inc. d/b/a New York Sports Clubs is a foreign corporation incorporated in Delaware with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 1001 US North Highway 1, Suite 201, Juniper, Florida 33477.

## FACTUAL ALLEGATIONS

### I.     CLASS ALLEGATIONS

#### A.     Background

21.     Town Sports International, LLC is one of the largest owners/operators of fitness clubs in the country with approximately 544,000 current members of approximately 150 gyms

located in New York, Massachusetts, Washington D.C., Pennsylvania, Connecticut, Maryland, New Jersey, Rhode Island and Virginia.[1]

22.     Among other properties and brands, TSI owns and operates approximately 102 gyms under the brand "New York Sports Club" ("NYSC"), 30 gyms under the brand "Boston Sports Club" ("BSC"), 10 gyms under the brand "Washington Sports Club" ("WSC") and five gyms under the brand "Philadelphia Sports Club" ("PSC").[2]  Certain of these gym locations are in the neighboring states of Connecticut, Maryland, New Jersey, Rhode Island and Virginia.

23.     TSI's annual revenue is approximately $400,000,000 per year, and the bulk of TSI's revenue comes from monthly and/or annual membership fees charged to gym members.

24.     TSI offers different membership options to consumers, including, but not limited to, Single Club Membership and Passport Membership.

25.     While the Single Club Membership affords a member access to one "home" location only, the higher-priced Passport Memberships afford members "all-access" to TSI's many locations.[3]

26.     The Passport Membership is critical to TSI's business model, as the ability to up-sell customers to the higher-priced membership provides for substantially increased revenue.

---

[1]     Information based on TSI's Securities and Exchange Commission Form 10-K, filed February 22, 2017 (the "2016 Annual Report").  Available here: http://www.annualreports.com/HostedData/AnnualReports/PDF/NASDAQ_CLUB_2016.pdf.

[2]     Information based on offerings available at www.newyorksportsclubs.com/clubs.  Not all gyms are located in the city or state represented by the brand name.  For instance, certain BSC gyms are located outside of Boston and/or outside of Massachusetts.

[3]     According to the 2016 Annual Report, TSI also offers a Regional Passport Membership which provides for "all-access" within a particular geographic region.  TSI also offers a "Gold Membership" which is all-access, but limited to off-peak times.  For purposes of this Complaint, the term "Passport Membership" includes the Regional Passport Memberships and Gold Memberships.

27.     For this reason, among others, TSI intentionally clusters its gym locations in dense and concentrated markets where customers will see value paying a premium to be able to access numerous geographically-convenient gym locations.

28.     Approximately 45% of TSI's current members – or, approximately 243,000 members – have contracted with TSI and/or pay for the Passport Membership.

29.     Plaintiffs, like all Passport Members, became members based on membership terms which were communicated to them.

30.     TSI asks some of its Passport Members to sign written membership contracts, and, in those instances, the written contract communicates the membership terms.  TSI has used various forms of written contracts, with varying terms in those contracts.

31.     However, most Passport Members have never been given or asked to execute a written membership contract.  For these Passport Members, the terms of membership are communicated verbally, whether in-person or over the phone.

32.     For many Passport Members who are told the terms of membership verbally, they are told to sign an electronic pad.

33.     This provides TSI with an electronic image of its members' signatures.

34.     For many Passport Members, TSI then superimposes the signature onto a membership contract to make it appear as though the person agreed to the terms in the written contract.

**B.     TSI's Deceptive All-Access Passport Membership**

35.     TSI has represented and held out to all to Plaintiffs and all other Passport Members that, upon becoming a Passport Member, one will be provided with unlimited all-

access usage of all TSI's gym locations, including all locations in use at the time and any locations opened in the future.

36.     These representations were made to Plaintiffs and all other Passport Members through verbal statements made by employees and/or agents of TSI as well as through written materials and/or contracts.

37.     For instance, but only by way of example, one commonly used version of TSI's membership contract provides that "***if you have a Passport membership, you may use any TSI club at any time***."

38.     Upon information and belief, TSI has used and uses the same and/or similar language in contracts with other Passport Members.

39.     Following the commencement of Passport Membership of Plaintiffs and other Passport Members, TSI has opened numerous additional NYSC, WSC, PSC and BSC gym locations.

40.     Plaintiffs and all other Passport Members were permitted to use and access all these new locations at will pursuant to the Passport Membership's all-access terms.

41.     TSI never informed Plaintiffs or any other Passport Members that because a gym location was not in existence at the time he or she started the Passport Membership that they were not permitted to use those gyms.

42.     In fact, to the contrary, TSI informed Plaintiffs and all other Passport Members that, pursuant to the Passport Membership, they were permitted to use and access all NYSC, WSC, PSC and BSC gym locations that opened after becoming a Passport Member.

43.     However, in or around 2017, TSI changed the terms of the Passport Membership without providing any notice to Plaintiffs or other Passport Members and while continuing to charge Plaintiffs' and other Passport Members' credit cards as if no terms had changed.

44.     In particular, TSI re-branded numerous gym locations as so-called "Elite" locations (despite doing virtually nothing to enhance the gym location) and affirmatively removed those gym locations from the all-access previously enjoyed by Plaintiffs and all other Passport Members.

45.     As of midway through 2017, Plaintiffs and Passport Members have not been and are currently not permitted all-access to numerous TSI locations, including, but not limited to:

- Passport Members have not been and are not permitted access to the NYSC gym located at 4 Astor Place, New York, NY 10003 (the "Astor Place Club").

- Passport Members have not been and are not permitted access to the NYSC gym located at 30 Broad Street, New York, NY 10005.

- Passport Members have not been and are not permitted access to the NYSC gym located at 113 East 23rd Street, New York, NY 10010.

- Passport Members have not been and are not permitted access to the NYSC gym located at 1637 Third Avenue (91st Street), New York, NY 10128.

- Passport Members have not been and are not permitted access to the BSC gym located at 100 Summer Street, Boston, MA 02110.

- Passport Members have not been and are not permitted access to the BSC gym located at 840 Winter Street, Waltham, MA 02451.

- Passport Members have not been and are not permitted access to the BSC gym located at 140 Great Plain Avenue, Wellesley, MA 02482.

Upon information and belief, there are additional TSI clubs that Passport Members have not been and/or are not permitted access.  Together, the above-referenced clubs are referred to herein as the "Inaccessible Clubs."

46.     Prior to this shift in practice and policy, each and every one of the Inaccessible Clubs was previously in operation and available to Plaintiffs and all Passport Members to use at any time – other than the Astor Place Club which opened in 2017.

47.     After this shift in practice and policy, TSI has denied and/or continues to deny Plaintiffs and all other Passport Members access to the Inaccessible Clubs, even though they were all – other than the Astor Place Gym – previously in operation and available to Plaintiffs and all Passport Members to use as part of the Passport Membership.

48.     Plaintiffs and all other Passport Members paid a premium for all-access to TSI's gym locations and have been and continue to be deprived of the benefit of that bargain.

49.     Many Passport Members, including Plaintiffs, have attempted to use TSI's so-called "Elite" locations – including locations that they previously were permitted to use – but have been denied access.

50.     Many Passport Members have scanned their membership barcode to use TSI's so-called "Elite" locations – including locations that they previously were always permitted to use – and TSI charged their credit cards additional amounts without any notice to the Passport Member or approval from the Passport Member for the charge.

51.     Many Passport Members have complained to TSI about the improper and unauthorized charges on their credit cards, but TSI has refused to provide refunds for these improper charges.

52.     TSI has misled customers about the nature of the Passport Membership.

53.     TSI informed Plaintiffs and all other Passport Members that the premium and more expensive membership rate would entitle them to access any and all of TSI's club locations that were open at the time their memberships began or that opened in the future, but TSI has failed to provide this service.

54.     Even if, at the time Plaintiffs and other Passport Members signed up to become Passport Members, TSI did not intend to deceive them as to the terms of membership, the fact still remains that TSI changed the terms of Passport Membership on Plaintiffs and all other Passport Members without any notice, yet continued to charge them the same membership fees.

55.     TSI's Passport Members – including Plaintiffs – have suffered monetary damages as a result of TSI's conduct, including, but not limited to, increased membership costs based on promised all-access that was not provided, the value of the services withheld and the fees paid to TSI for access to the Inaccessible Clubs.

56.     Plaintiffs and all other Passport Members justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

## II.     PLAINTIFFS' INDIVIDUAL ALLEGATIONS

### A.     Joshua Bilmes

57.     On or around June 30, 2013, Mr. Bilmes entered into an agreement with TSI to become a Passport Member.

58.     Mr. Bilmes was informed that the Passport Membership would provide him with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

59.     Mr. Bilmes paid a premium price for the Passport Membership to ensure that he would have all-access to every TSI club at any time.

60.     In 2017, TSI changed the terms of membership on Mr. Bilmes but without ever notifying him of the changed terms – namely, his Passport Membership no longer provided him with access to the Inaccessible Clubs, many of which he had previously been entitled to access.

61.     However, TSI continued to charge Mr. Bilmes's credit card the same Passport Membership rate, even though TSI was no longer providing Mr. Bilmes with all-access to its gym locations.

62.     TSI was charging Mr. Bilmes for a service that was less valuable than what it contractually agreed to provide him with when he agreed to pay the Passport Member rate.

63.     On at least one occasion in 2017, Mr. Bilmes attempted to enter the Inaccessible Club located at 1637 Third Avenue, New York, New York 10128, which had always been part of his all-access Passport Membership and he thought still was, as he had never been provided any notice that his Passport Membership no longer provided him all-access to TSI's gyms.

64.     However, after entering, Mr. Bilmes was made aware that he would be charged a $20 single-usage fee in order to gain access to this gym.

65.     Mr. Bilmes decided not to pay the $20 single-usage fee to access this gym location.

66.     Mr. Bilmes was thereafter prevented from going to this and other Inaccessible Clubs that he otherwise wanted to use and thought he had a right to use.

**B.    Samantha Fahy**

67.     In or around October 2010, Ms. Fahy became a Passport Member.

68.     Ms. Fahy was informed that the Passport Membership would provide her with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

69.     Ms. Fahy paid a premium price for the Passport Membership to ensure that she would have all-access to every TSI club at any time.

70.     In 2017, TSI changed the terms of membership on Ms. Fahy but without ever notifying her of the changed terms – namely, her Passport Membership no longer provided her with access to the Inaccessible Clubs, many of which she had previously been entitled to access.

71.     However, TSI continued to charge Ms. Fahy's credit card the same Passport Membership rate, even though TSI was no longer providing Ms. Fahy with all-access to its gym locations.

72.     TSI was charging Ms. Fahy for a service that was less valuable than what it contractually agreed to provide her with when she agreed to pay the Passport Member rate.

**C.     <u>Bari Lasky</u>**

73.     On or around October 15, 2015, Ms. Lasky became a Passport Member.

74.     Ms. Lasky was informed that the Passport Membership would provide her with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

75.     Ms. Lasky paid a premium price for the Passport Membership to ensure that she would have all-access to every TSI club at any time.

76.     In 2017, TSI changed the terms of membership on Ms. Lasky but without ever notifying her of the changed terms – namely, her Passport Membership no longer provided her with access to the Inaccessible Clubs, many of which she had previously been entitled to access.

77.    However, TSI continued to charge Ms. Lasky's credit card the same Passport Membership rate, even though TSI was no longer providing Ms. Lasky with all-access to its gym locations.

78.    TSI was charging Ms. Lasky for a service that was less valuable than what it contractually agreed to provide her with when she agreed to pay the Passport Member rate.

79.    During 2017, Ms. Lasky attempted to enter various Inaccessible Clubs, which had always been part of her all-access Passport Membership and she thought still were, as she had never been provided any notice that they were not.

80.    However, on numerous occasions, Ms. Lasky was denied access to these Inaccessible Clubs.

**D.    Elizabeth Plesser**

81.    On or around March 6, 2013, Ms. Plesser became a Passport Member.

82.    Ms. Plesser was informed that the Passport Membership would provide her with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

83.    Ms. Plesser paid a premium price for the Passport Membership to ensure that she would have all-access to every TSI club at any time.

84.    In 2017, TSI changed the terms of membership on Ms. Plesser but without ever notifying her of the changed terms – namely, her Passport Membership no longer provided her with access to the Inaccessible Clubs, many of which she had previously been entitled to access.

85.    However, TSI continued to charge Ms. Plesser's credit card the same Passport Membership rate, even though TSI was no longer providing Ms. Plesser with all-access to its gym locations.

14

86.     TSI was charging Ms. Plesser for a service that was less valuable than what it contractually agreed to provide her with when she agreed to pay the Passport Member rate.

87.     Ms. Plesser was also charged additional amounts when she visited Inaccessible Clubs, without her knowledge or consent.

88.     When Ms. Plesser would enter a gym, the barcode reflecting her membership (which is maintained on the New York Sports Club application on her phone) was scanned at the front desk.

89.     During 2017, Ms. Plesser entered various Inaccessible Clubs, which had always been part of her all-access Passport Membership and she thought still were, as she had never been provided any notice that they were not.

90.     When Ms. Plesser entered these gyms, she scanned her membership barcode as she always had before and used the gym facilities, and she was not notified that anything had changed or was different.

91.     However, when Ms. Plesser used these gyms in 2017, at some point she learned that NYSC began charging her $20 via her credit card on file for each time she visited those locations.  These charges, in total, reached into the hundreds of dollars.

92.     Ms. Plesser only much later learned about these charges when she checked her credit card statements.

93.     Ms. Plesser was never told by anyone at NYSC that she was going to be charged additional amounts for usage of these gyms.

94.     Ms. Plesser never agreed to pay any $20 fee for entry to any of these NYSC gym locations.

15

E.    **Petr Prielozny**

95.    In or around 2015, Mr. Prielozny became a Passport Member.

96.    Mr. Prielozny was informed that the Passport Membership would provide him with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

97.    Mr. Prielozny paid a premium price for the Passport Membership to ensure that he would have all-access to every TSI club at any time.

98.    In 2017, TSI changed the terms of membership on Mr. Prielozny but without ever notifying him of the changed terms – namely, his Passport Membership no longer provided him with access to the Inaccessible Clubs, many of which he had previously been entitled to access.

99.    However, TSI continued to charge Mr. Prielozny's credit card the same Passport Membership rate, even though TSI was no longer providing Mr. Prielozny with all-access to its gym locations.

100.    TSI was charging Mr. Prielozny for a service that was less valuable than what it contractually agreed to provide him with when he agreed to pay the Passport Member rate.

101.    Mr. Prielozny was also charged additional amounts when he visited Inaccessible Clubs, without his knowledge or consent.

102.    When Mr. Prielozny would enter a gym, the barcode reflecting his membership was scanned at the front desk.

103.    During 2017, Mr. Prielozny entered the Inaccessible Club located at 30 Broad Street, New York, New York 10005, which had always been part of his all-access Passport Membership and he thought still was, as he had never been provided any notice that it was not.

16

104.    When Mr. Prielozny entered this gym, he scanned his membership barcode as he always had before and used the gym facilities, and he was not notified that anything had changed or was different.

105.    However, when Mr. Prielozny used this gym in 2017, at some point he learned that NYSC began charging him $20 via his credit card on file for each time he visited this location.  These charges, in total, reached into the hundreds of dollars.

106.    Mr. Prielozny only much later learned about these charges when he checked his credit card statements.

107.    Mr. Prielozny was never told by anyone at TSI that he was going to be charged additional amounts for usage of this gym.

108.    Mr. Prielozny never agreed to pay any $20 fee for entry to any of these TSI gym locations.

109.    Additionally, on one occasion in 2017, Mr. Prielozny was denied access to the Inaccessible Club located at 30 Broad Street, New York, New York 10005 even though it had always been part of his all-access Passport Membership.

**F.    Vadim Ternovski**

110.    On or around March 17, 2017, Mr. Ternovski became a Passport Member.

111.    Mr. Ternovski was informed that the Passport Membership would provide him with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

112.    Mr. Ternovski paid a premium price for the Passport Membership to ensure that he would have all-access to every TSI club at any time.

17

113.    In 2017, TSI changed the terms of membership on Mr. Ternovski but without ever notifying him of the changed terms – namely, his Passport Membership no longer provided him with access to the Inaccessible Clubs, many of which he had previously been entitled to access.

114.    However, TSI continued to charge Mr. Ternovski's credit card the same Passport Membership rate, even though TSI was no longer providing Mr. Ternovski with all-access to its gym locations.

115.    TSI was charging Mr. Ternovski for a service that was less valuable than what it contractually agreed to provide him with when he agreed to pay the Passport Member rate.

116.    During 2017, Mr. Ternovski attempted to enter the Inaccessible Club located at 4 Astor Place, New York, New York 10003, which had always been part of his all-access Passport Membership and he thought still was, as he had never been provided any notice that it was not.

117.    However, on numerous occasions, Mr. Ternovski was denied access to the Inaccessible Club located at 4 Astor Place, New York, New York 10003.

**G.    Helena Von Rosenberg**

118.    In or around 2006, Ms. Von Rosenberg became a Passport Member.

119.    Ms. Von Rosenberg was informed that the Passport Membership would provide her with "all-access" to any TSI gym location – which would include all locations that opened in the future – in exchange for an agreed-upon membership fee.

120.    Ms. Von Rosenberg paid a premium price for the Passport Membership to ensure that she would have all-access to every TSI club at any time.

121.    In 2017, TSI changed the terms of membership on Ms. Von Rosenberg but without ever notifying her of the changed terms – namely, her Passport Membership no longer

provided her with access to the Inaccessible Clubs, many of which she had previously been entitled to access.

122.    However, TSI continued to charge Ms. Von Rosenberg's credit card the same Passport Membership rate, even though TSI was no longer providing Ms. Von Rosenberg with all-access to its gym locations.

123.    TSI was charging Ms. Von Rosenberg for a service that was less valuable than what it contractually agreed to provide her with when she agreed to pay the Passport Member rate.

124.    Ms. Von Rosenberg was also charged additional amounts when she visited Inaccessible Clubs, without her knowledge or consent.

125.    When Ms. Von Rosenberg would enter a gym, the barcode reflecting her membership was scanned at the front desk.

126.    During 2017, Ms. Von Rosenberg entered the Inaccessible Club located at 113 East 23 Street, New York, New York 10010, which had always been part of her all-access Passport Membership and she thought still was, as she had never been provided any notice that it was not.

127.    When Ms. Von Rosenberg entered this gym, she scanned her membership barcode as she always had before and used the gym facilities, and she was not notified that anything had changed or was different.

128.    However, when Ms. Von Rosenberg used these gyms in 2017, at some point she learned that TSI began charging her $20 via her credit card on file for each time she visited this location.  These charges, in total, reached into the hundreds of dollars.

129.    Ms. Von Rosenberg only much later learned about these charges when she checked her credit card statements.

130.    Ms. Von Rosenberg was never told by anyone at TSI that she was going to be charged additional amounts for usage of this gym.

131.    Ms. Von Rosenberg never agreed to pay any $20 fee for entry to this NYSC gym location.

## CLASS ACTION ALLEGATIONS

132.    Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and on behalf of all other similarly situated persons who are or have been Passport Members during the applicable statutory limitation periods (the "Class").

133.    The claims of the Class are the same as or substantially similar to those of Plaintiffs, and the Class, like Plaintiffs, has been subject to the same unlawful conduct.

134.    As a result of Defendants' conduct as alleged herein, Defendants have engaged in violations of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA, VCPA and MGLA, as well as breached contracts and/or engaged in fraudulent conduct.

135.    Defendants' violations of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA, VCPA and MGLA, as well as their breaches of contract and fraud have been willful, repeated, knowing, intentional and without a good faith basis, and have significantly damaged Plaintiffs and the Class.

136.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the Class for the full amount of any economic and monetary loss suffered by Plaintiffs and the Class, the full value of the services Plaintiffs and the Class have been denied and/or not had access to, and any and all other actual, statutory or other applicable damages.

137.    Certification of the Class's claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiffs' claims and the claims of the Class.

138.    Plaintiffs have standing to seek such relief because of the adverse effect that Defendants' unlawful conduct has had on them individually and on members of the Class.

139.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

140.    Certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class and Defendants.

141.    Plaintiffs' claims raise questions of law and fact common to the Class.  Among these questions are:

    a.    Whether Defendants contracted with Plaintiffs and the Class to provide Passport Members with all-access to TSI's clubs;

    b.    Whether Defendants engaged in deceptive and/or misleading consumer conduct towards Plaintiffs and the Class on their website;

    c.    Whether Defendants engaged in deceptive and/or misleading consumer conduct towards Plaintiffs and the Class in their advertisements and marketing materials;

    d.    Whether Plaintiffs and/or the Class were and/or are denied access to Defendants' Inaccessible Clubs;

    e.    Whether Defendants' unlawful conduct towards Plaintiffs and the Class constitutes breach of contract; and

    f.    Whether Defendants' unlawful conduct towards Plaintiffs and the Class constitutes a violation of GBL §349, DCCPPA, PUTPCPL, CUTPA, MCPA, NJCFA, RIUTPCPA, VCPA and MGLA.

142.    These common questions of law and fact arise from the same course of events, and each Class member will make similar legal and factual arguments to prove liability.

143.    Plaintiffs are members of the Class that they seek to represent.

144.    Plaintiffs' claims are typical of the claims of the Class.

145.    The relief Plaintiffs seek for the unlawful conduct complained of herein is also typical of the relief sought on behalf of the Class.

146.    Plaintiffs' interests are co-extensive with those of the Class that they seek to represent.

147.    Plaintiffs are willing and able to represent the Class fairly and to vigorously pursue their similar individual claims in this action.

148.    Plaintiffs have retained counsel who are qualified and experienced in class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

149.    Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate with respect to the Class.

150.    Injunctive and declaratory relief is a significant component of the relief sought by Plaintiffs on behalf of themselves and the Class.

151.    The common issues of fact and law affecting Plaintiffs' claims and those of the Class members, including the common issues identified above, predominate over any issues affecting only individual claims.

152.    The Class is so numerous that joinder of all members is impracticable.  While the exact number of the Class is unknown at the present time, it is estimated that the Class is comprised of at least 250,000 members.

## FIRST CLAIM FOR RELIEF
### (New York General Business Law §349)
### *On Behalf of Plaintiffs and the Class*

153.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

154.    As alleged herein, Defendants have been engaged, and continue to engage, in consumer-oriented conduct towards Plaintiffs and the Class that was and continues to be false, misleading and deceptive in a material way.

155.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

156.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

157.    Defendants' conduct constitutes a willful violation of GBL §349.

## SECOND CLAIM FOR RELIEF
### (D.C. Consumer Protection Procedures Act §§28-3901, *et seq.*)
### *On Behalf of the Class*

158.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

23

159.    As alleged herein, Defendants misrepresented, and continue to misrepresent, a material fact which has misled, and continues to mislead, Plaintiffs and the Class.

160.    Upon information and belief, numerous Passport Members reside in the District of Columbia.

161.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

162.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

163.    Defendants' conduct constitutes a willful violation of D.C. Consumer Protection Procedures Act §§28-3901, *et seq*.

**THIRD CLAIM FOR RELIEF**
**(Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, *et seq.*)**
***On Behalf of the Class***

164.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

165.    Plaintiffs and the Class purchased goods and/or services from Defendants primarily for their personal use.

166.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

167.    Upon information and belief, numerous Passport Members reside in Pennsylvania.

168.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

169.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

170.    Defendants' conduct constitutes a willful violation of Pennsylvania Unfair Trade Practices & Consumer Protection Law, Tit. 73 §201-1, *et seq.*

## FOURTH CLAIM FOR RELIEF
### (Connecticut Unfair Trade Practices Act, §42-110, *et seq.*)
### *On Behalf of the Class*

171.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

172.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

173.    Upon information and belief, numerous Passport Members reside in Connecticut.

174.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

175.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

176.    Defendants' conduct constitutes a willful violation of Connecticut Unfair Trade Practices Act, §42-110, *et seq.*

**FIFTH CLAIM FOR RELIEF**
**(Maryland Consumer Protection Act, §13-101, *et seq.*)**
***On Behalf of the Class***

177.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

178.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

179.    Upon information and belief, numerous Passport Members reside in Maryland.

180.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

181.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

182.    Defendants' conduct constitutes a willful violation of Maryland Consumer Protection Act, §13-101, *et seq.*

## SIXTH CLAIM FOR RELIEF
### (New Jersey Consumer Fraud Act, §56:8-1, *et seq*.)
### *On Behalf of the Class*

183.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

184.     As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

185.     Upon information and belief, numerous Passport Members reside in New Jersey.

186.     Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

187.     Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

188.     Defendants' conduct constitutes a willful violation of New Jersey Consumer Fraud Act, §56:8-1, *et seq*.

## SEVENTH CLAIM FOR RELIEF
**(Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq.*)**
***On Behalf of the Class***

189.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

190.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

191.    Upon information and belief, numerous Passport Members reside in Rhode Island.

192.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

193.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

194.    Defendants' conduct constitutes a willful violation of Rhode Island Unfair Trade Practice and Consumer Protection Act, §6-13.1-1, *et seq*.

## EIGHTH CLAIM FOR RELIEF
### (Virginia Consumer Protection Act of 1977, §59.1-196, *et seq.*)
### *On Behalf of the Class*

195.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

196.    As alleged herein, Defendants have been engaged, and continue to engage, in unfair and/or deceptive acts or practices or misrepresentations towards Plaintiffs and the Class that were and continue to be false, misleading and deceptive in a material way.

197.    Upon information and belief, numerous Passport Members reside in Virginia and the factual allegations set forth above apply to those Class members as well.

198.    Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

199.    Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

200.    Defendants' conduct constitutes a willful violation of Virginia Consumer Protection Act of 1977, §59.1-196, *et seq*.

## NINTH CLAIM FOR RELIEF
### (Mass. Consumer Protection Act, M.G.L.A. c. 93A §§1 *et seq.*)
### *On Behalf of the Class*

201.   Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

202.   As alleged herein, Defendants have been engaged, and continue to engage, in unfair and deceptive practices towards Plaintiffs and the Class in the conduct of commerce.

203.   Upon information and belief, numerous Passport Members reside in Massachusetts.

204.   Plaintiffs and the Class justifiably relied on Defendants' misrepresentations that Passport Membership would provide all-access to any TSI club at any time, and that reliance manifested itself in both becoming a Passport Member in the first place as well as continuing to pay membership fees on an ongoing monthly basis.

205.   Plaintiffs and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- The increased premium membership costs Plaintiffs and the Class paid and continue to pay for all-access to each and every one of TSI's clubs, despite the fact that such service was and is no longer provided;

- Additional fees charged to and paid by Plaintiffs and the Class – generally without their notice, consent or approval – for the ability to use and access TSI's so-called "Elite" clubs; and

- The value of the services that were withheld from Plaintiffs and the Class – namely, all-access to TSI's clubs.

206.   Defendants' conduct constitutes a willful violation of Mass. Consumer Protection Act, M.G.L.A. c. 93A §§1 *et seq*.

<u>**TENTH CLAIM FOR RELIEF**</u>
**(Breach of Contract as to All-Access Membership)**
***On Behalf of Plaintiffs***

207.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

208.    As alleged herein, Defendants entered into contracts (both written and unwritten) with Plaintiffs to provide services to them in exchange for monetary consideration.

209.    As alleged herein, Defendants agreed to provide Plaintiffs and all Passport Members with access to all of TSI's gym locations at any time.

210.    As alleged herein, Defendants have breached their contracts with Plaintiffs and the Class by denying access and/or not permitting access to the Inaccessible Clubs.

211.    As alleged herein, Defendants changed the terms of their contracts with Plaintiffs without any notice whatsoever.

212.    As alleged herein, as a result of Defendants' breach, Plaintiffs and the Class have suffered, and continue to suffer, damages, including, but not limited to, the increased membership costs based on promised access that was not provided, fees paid for access to TSI's clubs that was never actually provided and additional fees paid to TSI for access to the Inaccessible Clubs.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful;

B.    Enjoin Defendants from continuing to engage in unlawful practices;

C.    Enjoin Defendants from retaliating against Plaintiffs and Class members;

        D.       Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

        E.       Designate Plaintiffs as representatives of the Class;

        F.       Designate Plaintiffs' counsel as counsel of record for the Class;

        G.       Determine the damages sustained by Plaintiffs and the Class as a result of Defendants' unlawful conduct, and award those damages against Defendants and in favor of the Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed;

        H.       Award Plaintiffs and the Class any applicable statutory damages;

        I.       Award Plaintiffs and the Class any and all other applicable damages;

        J.       Award Plaintiffs and the Class their reasonable attorneys' fees and costs; and

        K.       Grant Plaintiffs and the Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury on all

issues of fact and damages.

Dated: March 15, 2019
         New York, New York                              Respectfully submitted,

                                                         **WIGDOR LLP**

                                                         By: _____
                                                             David E. Gottlieb
                                                             Taylor J. Crabill

                                                         85 Fifth Avenue
                                                         New York, NY 10003
                                                         Telephone:  (212) 257-6800
                                                         Facsimile:   (212) 257-6845
                                                         dgottlieb@wigdorlaw.com
                                                         tcrabill@wigdorlaw.com

                                                         *Attorneys for Plaintiffs and*
                                                         *Proposed Class Counsel*